IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| THE HONORABLE RICK PERRY,<br><br>*Plaintiff*,<br><br>v.<br><br>CHARLES JUDD, KIMBERLY BOWERS, and DON PALMER, members of the Virginia State Board of Elections, in their official capacities, and PAT MULLINS, in his official capacity as Chairman of the Republican Party of Virginia,<br><br>*Defendants*. | Civil No. 3:11-cv-856 |

## Memorandum in Support of Emergency Motion
## For Temporary Restraining Order and Preliminary Injunction

### Introduction

Plaintiff, The Honorable Rick Perry, submits the following brief in support of his motion for a preliminary injunction.

Plaintiff seeks a preliminary injunction to enjoin Defendants, members of the Virginia State Board of Elections (the "Board") and the Chairman of the Republican Party of Virginia, from enforcing the state-residency requirement for petition circulators found in the State Board of Elections "Petition of Qualified Voters for Presidential Primary," as authorized by Virginia Code § 24.2-545, which requires all petition circulators to be eligible to register to vote for the candidate for which they circulate a petition – on the grounds that it violates Plaintiff's freedoms of speech and association protected by the First and Fourteenth Amendments to the United States Constitution.

Additionally, Plaintiff seeks a preliminary injunction to enjoin the Defendants from

enforcing Virginia Code § 24.2-545 which requires each presidential candidate to obtain 10,000 qualified voter signatures from people who state they intend to vote in the Republican Party primary election on the grounds that it violates Plaintiff's freedom of speech and association protected under the First and Fourteenth Amendments to the United States Constitution.

Plaintiff also seeks a mandatory injunction compelling Defendants to certify Plaintiff as a candidate on the March 6, 2012 Republican Party primary ballot.

Because of the overly burdensome and unconstitutional requirements of § 24.2-545, Plaintiff was unable to obtain a sufficient number of signatures from qualified voters to qualify for the Republican Party presidential primary ballot in Virginia.

If either the state-residency requirement for petition circulators or the threshold amount of signators is constitutionally unenforceable, Plaintiff should be certified for the March 6, 2012 Republican Party primary ballot. The statutory scheme prohibited Plaintiff from engaging in other efforts to obtain the necessary petition signatures for certification.

Having no adequate remedy of law, a preliminary injunction is necessary because Plaintiff seeks to have his name placed on the March 6, 2012 Republican Party primary election ballot, to campaign for the office of President of the United States and engage in constitutionally protected political speech and assembly. Furthermore, if Plaintiff is to have any meaningful opportunity to exercise his right to seek office and campaign for the election, a preliminary and/or permanent injunction must issue soon because the deadline to print ballots is in the next two or three weeks.

**Facts**

Plaintiff, The Honorable Rick Perry, is a resident and the current Governor of the State of Texas. *See* Complaint ¶ 6.

Plaintiff is a candidate for the office of President of the United States and has filed a notice

of his candidacy with the Federal Election Commission of his candidacy. Additionally, Plaintiff satisfies all the requirements of Article II, Section 1, Clause 5 of the United States Constitution and is otherwise eligible and qualified to serve as President of the United States. *See* Complaint ¶¶ 15-17.

To appear on the Republican Party primary ballot in Virginia, a candidate must complete a Consent/Declaration Form and file petitions with the Board signed by at least 10,000 qualified voters, including at least 400 qualified voters from each congressional district in the Commonwealth, who attest that they intend to participate in the primary of the same political party as the candidate for whom the petitions are filed. VA. CODE ANN. § 24.2-545 B. Additionally, based upon the official form prescribed by the Board, the petition signatures must be from registered voters, and collected after July 1, 2011 by a registered voter or someone eligible to vote in Virginia who signs and in the petition in the presence of a notary (state-residency requirement).

Defendants Charles Judd, Kimberly Bowers, and Don Palmer are members of the Board and are sued in their official capacities. The Board is responsible for supervising and coordinating the work of county and city electoral boards and has the power to issue rules and regulations to implement the election law. VA. CODE ANN. § 24.2-103. A candidate for Office of the President of the United States files the Consent/Declaration Form and petition signatures with the Board, and the Board determines the placement and order of names on the primary ballot. VA. CODE ANN. § 24.2- 545 B-C.

Defendant Pat Mullins, in his official capacity Chairman of the Republican Party of Virginia, is responsible for certifying to the Board all candidates who meet the statutory petition signature scheme. VA. CODE ANN. § 24.2-545 B.

Plaintiff declared himself a candidate for the Office of President of the United States on August 13, 2011 and on August 15, 2011, the next business day after his declaration, filed the necessary paperwork with the Federal Elections Commission to allow him to publicly campaign for the office.

On October 31, 2011, Plaintiff signed and affirmed, in the presence of a notary, his Declaration of Candidacy for the Commonwealth of Virginia and on December 22, 2011, Plaintiff submitted to the Board over 6,000 petition signatures from qualified Virginia voters.

Despite the fact that Plaintiff could not qualify for the ballot in any other manner than by petition signatures, Defendant Mullins made a preliminary determination and publicly announced that Plaintiff had not submitted enough petition signatures and would not be certified for placement of his name on the presidential primary ballot.

## Argument

Plaintiff seeks a preliminary injunction. A court may issue a preliminary injunction if it determines that: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in the plaintiff's favor, and (4) an injunction is in the public interest. W. *Va. Assoc. of Club Owners & Fraternal Servs., Inc. v. Musgrave,* 553 F.3d 292, 298 (4th Cir. 2009) *(applying Winter v. Natural Res. Def. Council,* 129 S. Ct. 365, 374 (2008)).

### I. Plaintiff Has Likely Success on the Merits.

**A. The First Amendment applies to Plaintiff's petition circulation activities.**

The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble."[1] U.S. CONST. AMEND. I. Virginia's

---

[1] The First Amendment is applicable to the states pursuant to the Fourteenth Amendment to the United States Constitution. *Thornhill v. Alabama,* 310 U.S. 88, 95 (1940).

4

state-residency requirement abridges the freedoms of speech and association in violation of this mandate.

Virginia's state-residency requirement abridges Plaintiff's speech and associational rights in at least four ways. First, it impacts his ability to disseminate his political views by restricting the number of message carriers who can gather signatures on his behalf, and in turn, the size of the audience that can be reached. *See Buckley v. Am. Constitutional Law Found., Inc. ("ACLF"),* 525 U.S. 182, 194-95 (1999) (recognizing burden imposed by Colorado law that restricted the number of petition circulators who could disseminate plaintiffs' message, and therefore, the size of the audience that could be reached). Second, it prevents Plaintiff from choosing what he believes to be the most effective means of conveying his message. *See Meyer v. Grant,* 486 U.S. 414, 424 (1988) (First Amendment protects person's right to "select what [he] believe[s] to be the most effective means" for advocating his cause). Third, it restricts Plaintiff's ability to associate in a meaningful way with individuals that sign his petition for the purpose of eliciting political change. *See id.* at 421-22 (First Amendment protects right to advocate for political change). Finally, it impacts his ability to gain access to the ballot, and therefore, his ability to make his candidacy the subject of nation-wide discussion. *See id.* at 423 (recognizing burden imposed by Colorado law that limited plaintiffs' ability to make their ballot proposal "the focus of statewide discussion").

Thus, Virginia's state-residency requirement implicates Plaintiff's freedoms of speech and association and is subject to First Amendment review.

> **B. The state-residency requirement is subject to strict scrutiny because it imposes severe burdens on Plaintiff's freedoms of speech and association.**

The Supreme Court has uniformly held that laws that severely burden speech and association protected by the First Amendment must be narrowly tailored to serve a compelling

5

governmental interest ("strict scrutiny"). *Wash. State Grange v. Wash. State Republican Party,* 128 S. Ct. 1184, 1191 (2008); *Clingnzan v. Beaver,* 544 U.S. 581, 586 (2005); *Cal. Democratic Party v. Jones,* 530 U.S. 567, 582 (2000); *ACLF,* 525 U.S. at 192 n.12; *Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 358 (1997); *Burdick v. Takushi,* 504 U.S. 428, 434 (1992). Virginia's state-residency requirement is subject to strict scrutiny because it imposes a severe burden on Plaintiff's' freedoms of speech and association.[2]

*In Meyer v. Grant,* the Supreme Court explained that Colorado's ban on paid petition circulators burdened proponents' speech and associational rights by significantly reducing the size of the audience that could be reached, and by making it less likely that the proponents of a ballot initiative could qualify their measure for the ballot and thus make their initiative the focus of statewide attention. 486 U.S. at 423. In *ACFL,* the Court echoed *Meyer* in recognizing the heavy burden imposed by a law that permitted only registered Colorado voters to circulate petitions because it significantly limited the number of people who could spread plaintiffs' political message and, necessarily, had the effect of diminishing the size of the audience that could be reached. *Id.* at 194-95. In both *Meyer* and *ACLF,* the Court found that the law at issue "imposed a burden on political expression that the State … failed to justify." *Meyer,* 486 U.S. at 428; *accord ACLF,* 525 U.S. at 195.

Numerous courts have applied *Meyer* and *ACLF* and have concluded that laws imposing state-residency requirements on petition circulators impose severe burdens on the freedoms of speech and association protected by the First Amendment.

For example, in *Krislov v. Rednour,* the Seventh Circuit applied strict scrutiny after concluding that a state law that required petition circulators to be residents of the same

---

[2] Laws imposing lesser burdens are scrutinized under a less demanding standard. *Burdick,* 504 U.S. at 434; *see also Doe v. Reed,* No. 09-559, slip op. at 6-7 (S. Ct. 2010) (applying "exacting scrutiny" to mandatory disclosure statute).

congressional district for which the candidate was seeking office imposed a severe burden on protected speech and association. 226 F.3d 851, 856, 859-62 (7th Cir. 2000). The court explained that the restriction at issue imposed a severe burden by inhibiting the right to ballot access, limiting the candidates' ability to associate with a class of circulators, limiting the candidates' ability to choose the most effective means of communication, and reducing the candidates' ability to disseminate a political message to a wider audience. *Id.* at 860.

*Krislov* held that the district-residency requirement imposed a severe burden because it excluded millions of potential petition circulators, thereby reducing the number of individuals capable of disseminating the candidates' message and the potential audience that could be reached. *Id.* at 860-62; *see also Yes on Tenn Limits, Inc. v. Savage,* 550 F.3d 1023, 1028 (10th Cir. 2008) (applying strict scrutiny because law burdened core political speech); *Nader v. Blackwell,* 545 F.3d 459, 475, 478 (6th Cir. 2008) (applying strict scrutiny because law severely burdened political speech); *Nader v. Brewer, 531* F.3d 1028, 1036 (9th Cir. 2008) (same); *Chandler v. City of Arvada,* 292 F.3d 1236, 1241, 1243 (10th Cir. 2002) (applying strict scrutiny because law burdened core political speech); *Lerman v. Bd. of Election in the City of New York,* 232 F.3d 135, 149 (2d Cir. 2000) (applying strict scrutiny because law severely burdened political speech and association); *Bogaert v. Land, 572* F. Supp. 2d 883, 902 (W.D. Mich. 2008) (applying strict scrutiny); *Frami v. Ponto,* 255 F. Supp. 2d 962, 968 (W.D. Wis. 2003) (same); *Morrill v. Weaver,* 224 F. Supp. 2d 882, 900 (ED. Pa. 2002) (same). *But see Initiative & Referendum Inst. v. Jaeger,* 241 F.3d 614 (8th Cir. 2001) (state residency requirement did not impose severe burden).

The burden that a particular regulation imposes is not lessened just because the regulation does not foreclose other options. In other words, the fact that a law burdens protected speech

and association, but leaves people "free" to pursue other "'more burdensome' avenues of communication, does not relieve its burden on First Amendment expression." *Mever,* 486 U.S. at 424; *see also ACLF,* 525 U.S. at 195 (observing, in the context of Colorado's requirement that petition circulators be registered voters, that "the ease with which qualified voters may register to vote…does not lift the burden on speech at petition circulation time"). The state-residency requirement deprives Plaintiff of the opportunity to choose what he believes to be the most effective method of soliciting support for his candidacy. The state-residency requirement is particularly burdensome as applied to Plaintiff because it prevents him from personally soliciting signatures *for his own candidacy*. Foreclosing even a single circulator, as was the case here, can mean the difference between success and failure in obtaining the required number of signatures. *See Lerman,* 232 F.3d at 147 (burden imposed on minor political candidates "can be particularly severe"); *Krislov,* 226 F.3d at 862 ("To the extent the [statute] prevents candidates from using the people they consider to be the best means of carrying their message to the public, it places a substantial burden on the candidates' ability to convey their political ideas, *even if it only restricts the candidate from using a few circulators*." (emphasis added)).

Here, the state-residency requirement had the effect of preventing Plaintiff from pursuing what he believed was the most effective means of advancing his cause.

In sum, Virginia's district-residency requirement severely burdens Plaintiff's freedoms of speech and association and is therefore subject to strict scrutiny.

### C. The state-residency requirement is not narrowly tailored to meet any compelling government interest.

When a state regulation severely burdens First Amendment rights, the burden is *on the government* to prove that the restriction is narrowly tailored to serve a compelling government interest. *Citizens United v. FEC,* 130 S. Ct. 876, 898 (2010); *see also Meyer,* 486 T.J.S. at 428

(law at issue "imposed a burden on political expression that *the State . . . failed* to justify"); *ACLF,* 525 U.S. at 195 (same) *(quoting Meyer).* The burden is on the government even at the preliminary injunction stage because "the burdens at the preliminary injunction stage track the burdens at trial." *Gonzales* V. *O Centro Espirita Beneficente Uniao do Vegetal,* 546 U.S. 418, 429 (2006) (observing that in *Ashcroft v. ACLU,* 542 U.S. 656, 666 (2004), the Court appropriately granted a preliminary injunction "where *the Government* had failed to show a likelihood of success under the compelling interest test" (emphasis added)).

To satisfy its burden, a state must provide more than speculative, categorical answers. *See Gonzales,* 546 U.S. at 430-31 (strict scrutiny is not satisfied by a "categorical approach," but rather, requires a case-by-case determination of the question). In other words, the government "must do more than simply posit the existence of the disease sought to be cured. It must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Turner Broad. Sys., Inc. v. FCC,* 512 U.S. 622, 664 (1994) (citation and internal quotation marks omitted); *see also Meyer*, 486 U.S. at 426 (refusing to accept state's bald argument that paid circulators might be more tempted to cheat than volunteer circulators where the state offered "[n]o evidence…to support that speculation").

Defendants cannot meet this burden because there is simply no legitimate state interest to be protected by prohibiting either out-of-state or non-registered voter petition circulators. Therefore, Plaintiffs have shown likely success on the merits.

**D. Finally, there is no legitimate state interest in requiring 10,000 individual qualified voters sign a petition for a candidate and that 400 signatures come from each congressional district.**

The required amount of signatures on a petition to be a party's candidate for the office of

9

President of the United States is simply unreasonably burdensome[3] and is not narrowly tailored to meet a compelling governmental interest. (*See* ¶ I. B. supra and cases cited therein). The requirements in Virginia's statute are substantially similar to the ballot access requirements that were in place in New York prior to New York's statute being held unconstitutional in *Rockefeller v Powers,* 78 F.3d 44 (2d Cir 1999).

As the United Stated Court of Appeals for the Second Circuit noted in *Rockefeller, supra*:

> With regard to the question of the substantiality of the burden placed on candidates seeking access to the primary ballot, the district court found that candidates without the support of the state Republican leadership were substantially burdened by the combination of (i) the requirement that a slate of delegates collect signatures in each district amounting to 5% or 1250 registered Republicans, whichever is less; (ii) the requirement that the collection of signatures must occur in a period of 37 days, during which there are several important holidays, inclement weather, school and family vacations, and short periods of daylight; (iii) a rule limiting a voter from signing petitions for more than one candidate, thus reducing the total pool available to those collecting signatures; (iv) a host of rules defining what is a valid signature, including rules as to the qualification of witnesses to signings and inclusion of the election or Assembly district numbers of signers; and (v) other highly technical requirements that concern the presentation of petitions containing the signatures to election officials. We agree that this combination of New York requirements severely hampers candidates in contacting a sufficient number of registered Republicans and in collecting, legally documenting, and validly presenting their signatures. Indeed, as the district court found, at least 140% of the requisite 5/1250 % signatures usually must be collected to survive hypertechnical challenges and to succeed in getting a delegate slate on the ballot. (The Powers affidavit suggests that signatures of 140% of the required number is too little.)
>
> With regard to justification for the substantial burdens on candidates, the district court noted that New York ballot access rules are far more burdensome than those adopted by virtually every other state. Indeed, the 5/1250 % requirement is itself onerous in comparison with other states even without the very technical rules concerning the validation and presentation of the

---

[3] As of this date, five of seven of the nationally campaigning candidates for the Republican Party nominee for office of the President of the United States did not qualify to be on the Virginia Republican Primary Ballot. In 2008, 119,034 people cast votes for the office of President in the Republican Party Primary. Requiring multiple candidates to each obtain 10,000 signatures is facially unrealistic and unduly burdensome.

signatures that require as a practical matter the collection of at least 140% of the requisite number of signatures. The court further found that the rules as to the qualification of witnesses to signing, listing of election or Assembly district numbers of signers, and other technical requirements serve no legitimate governmental purposes. Moreover, it concluded that the state's acknowledged interest in seeing that candidates on the ballot have substantial public support does not justify the 5/1250 % rule. Indeed, New York provides an option to political parties providing for the collection of the least of 0.5% or 1,000 signatures in each district as a fully permissible alternative scheme. The district court noted that this alternative scheme by its very existence demonstrates that the 5/1250 % requirement is unnecessary to satisfy the New York's interest in seeing that no candidate be on the ballot without substantial public support. We agree with the district court."

The Virginia ballot access statute is even more burdensome than New York's in that the shear number of required signatures is unjustifiably burdensome. For this reason alone, Virginia Code § 24.2-545 should be held unconstitutional.

The mandatory signature requirement, in combination with the petition circulator requirements, renders the entire statutory scheme constitutionally impermissible.

## II. Absent a Preliminary Injunction, Plaintiff Will Suffer Irreparable Harm.

"[L]oss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Newsom ex rel. Newsom v. Albemarle County Sch. Bd.,* 354 F.3d 249, 261 (4th Cir. 2003) (internal quotation marks omitted) *(quoting Elrod v. Burns,* 427 U.S. 347, 373 (1976)). Furthermore, the Fourth Circuit recognizes that "in the context of an alleged violation of First Amendment rights, a plaintiffs claimed irreparable harm is 'inseparably linked' to the likelihood of success on the merits of plaintiffs First Amendment claim." *Musgrave,* 553 F.3d at 298 *(quoting W. Va. Assoc. of Club Owners & Fraternal Servs., hic. v. Musgrave,* 512 F. Supp. 2d 424, 429 (S.D. W. Va. 2007)). As set forth above, the Virginia ballot access requirements unconstitutionally burdens Plaintiff's freedoms of speech and association. Thus, Plaintiff has established irreparable harm.

Plaintiff's injuries are particularly acute because the Virginia ballot access requirements have, as applied here, prevented Plaintiff from qualifying for the ballot. If Plaintiff does not appear on the ballot, Plaintiff will have forever lose the ability to obtain the convention delegates from the Commonwealth of Virginia in his bid to be the Republican Party nominee for Office of the President of the United States *in the 2012 election.* Thus, in the absence of a preliminary injunction, Plaintiff will suffer irreparable harm.

### III. The Balance of Hardships Favors Plaintiffs.

The third prerequisite to the grant of a preliminary injunction is that the balance of the equities "tips" in favor of the plaintiffs, meaning that the burden imposed on the plaintiffs if a preliminary injunction is *not granted* outweighs the burden that *granting* a preliminary injunction would impose on the defendants. *Winter,* 129 S. Ct. at 374, 378. In another First Amendment case, the Fourth Circuit has held that "[w]ith respect to the harm that would befall if an injunction were put in place, [a governmental agency] is in no way harmed by issuance of a preliminary injunction which prevents it from enforcing a regulation, which . . . is likely to be found unconstitutional." *Newsom,* 354 F.3d at 261.

Similarly, here, the Commonwealth will not be harmed by the issuance of an injunction against the enforcement of the state-residency requirement. Indeed, the only harm the Commonwealth will suffer is in being restrained from maintaining a law that is likely to be found unconstitutional. Plaintiffs, on the other hand, are likely to suffer irreparable injury because of his "loss of First Amendment freedoms." The balance of the equities therefore tips decidedly in their favor.

### IV. The Public Interest Favors an Injunction.

The final prerequisite to the grant of a preliminary injunction is that it serve the public

interest. In another First Amendment case, the Fourth Circuit has held that "[s]urely, upholding constitutional rights serves the public interest." *Newsom,* 354 F.3d at 261. Because Plaintiff has demonstrated a likelihood of success on the merits of their claim, granting a preliminary injunction here will have the effect of "upholding constitutional rights." Granting the injunction therefore serves the public interest.

## Conclusion

For the foregoing reasons, this Court should grant Plaintiff's emergency motion for a temporary restraining order and preliminary injunction and:

1. Enjoin Defendants from enforcing the state-residency requirement for petition circulators found in the State Board of Elections "Petition of Qualified Voters for Presidential Primary, as authorized by Virginia Code § 24.2-545;

2. Order the Virginia State Board of Elections to not conduct their drawing for placement of candidate names on the March 6, 2012 primary ballots, nor print and distribute without Plaintiff's name on them; and

3. Order the Virginia State Board of Elections to place the Plaintiff on the Republican Primary Ballot for the office of the President of the United States.

Respectfully Submitted,

**THE HONORABLE RICK PERRY**

_____/s/_____
M. F. Connell Mullins, Jr. (VSB No. 47213)
Email: cmullins@spottsfain.com
Hugh M. Fain, III (VSB No. 26494)
Email: hfain@spottsfain.com
Edward Everett Bagnell, Jr. (VSB No. 74647)
Email: ebagnell@spottsfain.com
SPOTTS FAIN PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone: (804) 697-2000
Facsimile: (804) 697-2100

Joseph M. Nixon (Pro hac vice application pending)
Email: jnixon@bmpllp.com
James E. ("Trey") Trainor, III (Pro hac vice to be filed)
Martin D. Beirne (Pro hac vice application pending)
**BEIRNE, MAYNARD & PARSONS, L.L.P.**
1300 Post Oak Boulevard, Suite 2500
Houston, TX 77056
Telephone: (713) 623-0887
Facsimile: (713) 960-1527

**ATTORNEYS FOR PLAINTIFF
THE HONORABLE RICK PERRY**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 28, 2011, I will electronically file the foregoing document with the Clerk of the Court using the CM/ECF System, which will then send a notification of such filing (NEF) to all counsel of record.

I have also arranged for hand service of the foregoing document on the following Defendants, who have yet to make an appearance in this case:

CHARLES JUDD, KIMBERLY BOWERS, and DON PALMER,
members of the Virginia State Board of Elections, in their official capacities,

and

PAT MULLINS,
in his official capacity as Chairman of the Republican Party of Virginia.

                                           /s/
                             M. F. Connell Mullins, Jr. (VSB # 47213)
                             Email: cmullins@spottsfain.com
                             Attorney for The Honorable Rick Perry
                             SPOTTS FAIN PC
                             411 East Franklin Street, Suite 600
                             P.O. Box 1555
                             Richmond, Virginia 23218-1555
                             Telephone: (804) 697-2000
                             Facsimile: (804) 697-2100