Civil Action No.: 3:11-cv-856-JAG
_____

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

_____

## THE HONORABLE RICK PERRY,

*Plaintiff,*

**v.**

## CHARLES JUDD, *et al.*,

*Defendants.*

_____

## MEMORANDUM IN OPPOSITION TO
## MOTION FOR PRELIMINARY INJUNCTION

KENNETH T. CUCCINELLI, II
Attorney General of Virginia

E. DUNCAN GETTCHELL, JR.
(VSB#14156)
Solicitor General of Virginia
dgegchell@oag.state.va.us

WESLEY G. RUSSELL, JR.
(VSB#38756)
Deputy Attorney General

JOSHUA N. LIEF
(VSB#37094)
Senior Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
900 East Main Street
Richmond, VA  23219
Telephone:     (804) 786-2436
Facsimile:     (804) 786-1991
*Counsel for Defendants Judd, Bowers
and Palmer*

# TABLE OF CONTENTS

Page

I.    LEGAL STANDARD APPLICABLE TO PRELIMINARY INJUNCTIONS ..................1

II.   ARGUMENT ...........................................................................................................2

      A.    Numeric Requirements - Likelihood of Success on the Merits. .............................2

      B.    Plaintiff and Intervenors Lack Standing. ..................................................................4

      C.    The Motion for a Preliminary Injunction is Barred by Laches. ..............................6

      D.    The Motion for a Preliminary Injunction Against the Residency/Voter
            Eligibility Requirements Fails Under the Applicable Factors. ...............................8

            1.    Plaintiff and Intervenors Cannot Demonstrate the Requisite Likelihood of
                  Success on the Merits...............................................................................................8

            2.    Plaintiff and Intervenors Cannot Demonstrate Irreparable Harm.........15

            3.    The Balance of Equities and Consideration of the Public Interest Favor
                  Defendants    …………………………………………………….   16

      E.    The New Theories Raise in the First Amended Complaint………………….. .. 17

CONCLUSLION ………………………………………………………………………..22

CERTIFICATE OF SERVICE …………………………………………………………….24

# TABLE OF AUTHORITIES

## Cases

*Am. Party of Tex. v. White*, 415 U.S. 767 (1974)........................................................................ 19

*American Party of Texas v. White*, 415 U.S. 767 (1974) ............................................................. 4

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ............................................................................ 19

*Antisdel v. Ashby,* 279 Va. 42, 48, 688 S.E.2d 163, 166 (2010) ................................................ 27

*Ariz. Minority Coal. for Fair Redistricting v. Ariz. Indep. Redistricting Comm'n,* 366 F. Supp. 2d 887, 907-10 (D. Ariz. 2005)............................................................................................................. 22

*Bogaert v. Land*, 572 F.Supp. 883 (W.D. Mich. 2008) ........................................................ 11, 16

*Buckley v. American Constitutional Law Foundation*, 525 U.S. 182 (1999) ....................... passim

*Calvary Christian Center v. City of Fredericksburg*, 2011 U.S. Dis. LEXIS 77489 (E.D. Va. 2011) .............................................................................................................................................. 1

*Caputo v. Holt,* 217 Va. 302, 305, 228 S.E.2d 124, 137 (1976)................................................ 27

*Cardona v. Oakland Unified Sch. Dist.,* 785 F. Supp. 2d 837, 842-4 (N.D. Cal. 1992)............... 22

*Chandler v. City of Arvada*, 292 F.3d 1236 (10th Cir. 2002) .................................................... 11

*Cornwall v. Sachs*, 99 F.Supp. 2d 695 (E.D. Va. 2000) ............................................................. 2

*Dobson v. Dunlap*, 576 F. Supp. 2d 181 (D. Me. 2008) ............................................................ 10

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*,  438 U.S. 59 (1978)................. 5

*Duke v. Cleland*, 954 F.2d 1526, 1529, 1533 (11th Cir. 1992).................................................. 20

*Fishman v. Schaffer*, 429 U.S. 1325 (1976)................................................................................. 8

*Frami v. Ponto*, 255 F. Supp. 2d 962 ................................................................................... 11, 16

*Frami v. Ponto*, 255 F.Supp.2d 962 (W.D. Wis. 2003) .............................................................. 11

*Fulani v. Hogsett*, 917 F.2d 1028 (7th Cir. 1990)........................................................................ 9

*Green Party v. Weiner*, No. 00CIV6639, 2000 U.S. Dist. LEXIS 12963, at *8-9 (S.D.N.Y. Sept. 8, 2000) ........................................................................................................................................ 22

*GTE Corp. v. Williams*, 731 F.2d 676 (10th Cir. 1984)............................................................... 2

*Harper v. Va. Dep't of Taxation,* 250 Va. 184, 194, 462 S.E.2d 892, 898 (1995)...................... 27

*Hart v. Secretary of State*, 715 A.2d 165 (Me. 1998) ............................................................... 13

*Herndon v. N.C. State Bd. of Elections*, 710 F.2d 177 (4th Cir. 1983)...................................... 10

*Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993) ................................................ 21

*Initiative & Referendum Inst.  v. Secretary of State*, 1999 U.S. Dist. LEXIS 22071 (D. Maine). 13

*Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614 (8th Cir. 2001) ..................................... 13

*Interactive Media Entm't & Gaming Ass'n v. Holder*, No. 09-1301, 2011 U.S. Dist. LEXIS 23383 (D.N.J. March 7, 2011) ............................................................................................................ 7

*Jenness v. Fortson*, 403 U.S. 431, 438-39 (1971) ............................................................ 4

*Kay v. Austin*, 621 F.2d 809 (6th Cir. 1980) .................................................................... 9

*Kean v. Clark*, 56 F.Supp.2d 719 (S.D. Miss. 1999) ...................................................... 13

*Krislov v. Rednour*, 226 F.3d 851 (7th Cir. 2000) .............................................. 11, 17, 18

*Leigton v. Maury,* 76 Va. 865, 870 (1882) ...................................................................... 25

*Lerman v. Bd. of Elections in the City of New York*, 232 F.3d 135 (2d Cir. 2000) ...................... 11

*Lewis v. Casey*, 518 U.S. 343 (1996) ..................................................................... 5, 6, 7

*Libertarian Party of Conn. v. Bysiewicz*, No. 3:08-cv-1513, 2008 U.S. Dist. LEXIS 97970 (D. Conn. Dec. 2, 2008) .......................................................................................................... 10

*Libertarian Party of Va. v. Davis*, 766 F.2d 865 (4th Cir. 1985) ............................... 12, 13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................................ 7

*Lux v. Rodrigues*, 131 S. Ct. 5 (2010) .......................................................................... 2, 9

*Lux v. Rodrigues*, 736 F.Supp.2d 1042 (E.D. Va. 2010) ................................................ 12

*Massachusetts v. Mellon*, 262 U.S. 447 (1923) ................................................................ 6

*Masters v. Hart,* 189 Va. 969, 979, 55 S.E.2d 205, 210 (1949) ...................................... 26

*McClafferty v. Portage Cnty. Bd. of Elections*, 661 F. Supp. 2d 826 (N.D. Ohio 2009) ............... 9

*Meeks v. Commonwealth,* 274 Va. 798, 802, 61 S.E.2d 637, 639 (2007) ....................... 27

*Meyer v. Grant*, 486 U.S. 414 (1988) ............................................................................ 15

*Mirant Potomac River, LLC v. EPA*, 577 F.3d 223 (4th Cir. 2009) ................................. 6

*Morrill v. Weaver*, 224 F.Supp.2d 882 (E.D. Penn. 2002) ............................................. 12

*Munro v. Socialist Workers Party*, 479 U.S. 189 (1986) .................................................. 4

*Muntaqim v. Coombe*, 449 F.3d 371 (2d Cir. 2006) (en banc) (per curiam) ................... 6

*Nader v. Blackwell*, 545 F.3d 459 (6th Cir. 2008) ............................................... 11, 16, 17

*Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008) .................................................... 11, 18

*Patton v. Democratic Town Comm.*, 253 Fed. Appx. 129, 131 (2d Cir. Nov. 6, 2007) .............. 21

*Pettus v. Hendricks,* 113 Va. 326, 330, 74 S.E. 191, 193 (1912)) ................................. 26

*Planned Parenthood v. Camblos,* 155 F.3d 352, 382-83 (4th Cir. 1998) ....................... 26

*Quince Orchard Valley Citizens Ass'n v. Hodel,* 872 F.2d 75, 79-80 (4th Cir. 1989) ................. 23

*Rainbow Coalition of Oklahoma v. Oklahoma State Election Board*, 844 F.2d 740 (1988) .......... 4

*Real Truth About Obama, Inc. v. FEC,* 575 F.3d 342, 346 (4th Cir. 2009) ..................... 21

*Respect Maine PAC v. McKee,* 622 F.3d 13, 16 (1st Cir. 2010) .................................... 22

*Reynolds v. Sims*, 377 U.S. 533, 585 (1964) ....................................................................... 21

*Ross v. Craw,* 231 Va. 206, 212, 343 S.E.2d 312, 316 (1986) .................................................. 25

*Siegel v. LePore*, 234 F.3d 1163, 1177-78 (11th Cir. 2000) ....................................................... 20

*Simkins v. Gressette,* 631 F.3d 287 (4th Cir. 1980) ................................................................. 24

*Spindel v. Jamison,* 199 Va. 954, 957, 103 S.E.2d 205, 208 (1958) ........................................... 25

*Storer v. Brown*, 415 U.S. 724 (1974) ................................................................................ 4, 19

*Supervs. of Botetourt Cnty. v. Cahoon,* 121 Va. 768, 773-79, 94 S.E. 340, 341-43 (1917) (collec
.................................................................................................................................... 26

*Sw. Voter Registration Educ. Project v. Shelley,* 344 F.3d 914, 918 (9th Cir. 2003).................. 22

*Tiffany v. Forbes Custom Boats, Inc.*, No. 91-3001, 1992 U.S. App. LEXIS 6268 (4th Cir. Apr.
6, 1992) (per curiam) ...................................................................................................... 2

*United States v. Albertini,* 472 U.S. 675, 689 (1985)) .................................................................. 19

*Valenti v. Mitchel,* 962 F.2d 288, 298-302 (3d Cir. 1992) .......................................................... 22

*Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989) .......................................................... 19

*Westermann v. Nelson*, 409 U.S. 1236 (1972) ....................................................................... 9

*Wetzel v. Edwards*, 635 F.2d 283 (4th Cir. 1980) ..................................................................... 2

*Winter v. NRDC, Inc.,* 555 U.S. 7 (2008) ........................................................................... 1, 5

*Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023 (10th Cir. 2008) .......................................... 11

*Zinone v. Lee's Crossing Homeowners Ass'n,* 282 Va. 330, 336-38, 714 S.E.2d 922, 924-26
(2011)............................................................................................................................ 26

## Other Authorities

Michael S. Lewis-Beck and Peverill Squire, *The Politics of Institutional Choice:  Presidential
Ballot Access for Third Parties in the United States*, 25 B.J.Pol.S. 419 (1995) ...................... 3, 4

## Statutes

Va. Code Ann. § 24.2-506 ................................................................................................ 12

Va. Code Ann. § 24.2-545B.............................................................................................. 6, 12

## Constitutional Provisions

Const. Art. II, Sec. 2, cl. 1................................................................................................. 7

## Other Authorities

Michael S. Lewis-Beck and Peverill Squire, *The Politics of Institutional Choice:  Presidential
Ballot Access for Third Parties in the United States*, 25 B.J.Pol.S. 419 (1995)........................6, 7

### I.     LEGAL STANDARD APPLICABLE TO PRELIMINARY INJUNCTIONS

The ordinary standard governing the award of a preliminary injunction is itself quite high. *Winter v. NRDC, Inc.*, 555 U.S. 7 (2008).  As the *Winter* Court noted:  "A preliminary injunction is an extraordinary remedy never awarded as of right."  *Id.* at 24.  To be entitled to the extraordinary remedy of a preliminary injunction, plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Id.* at 20.

While for reasons discussed in greater detail below plaintiff cannot meet the *Winter* standard, his burden in this case is even higher than that.  Although cast as a temporary, prohibitory injunction, plaintiff's and intervenors' motions are, in substance, attempts to resolve the merits of the underlying suits and achieve preliminarily all of the relief they would be entitled to if they were to prevail at trial.  Within the realm of temporary injunctions, such motions are particularly disfavored and require a heightened showing of likelihood of success on the merits.  *See, e.g.*, *Calvary Christian Ctr. v. City of Fredericksburg*, No. 3:11-cv-342, 2011 U.S. Dist. LEXIS 77489, at *3-4 (E.D. Va. July 18, 2011)  ("The Fourth Circuit has viewed mandatory relief with caution, explaining that it 'should be granted only in those circumstances when the exigencies of the situation demand such relief.'  '[A] mandatory preliminary injunction must be necessary both to protect against irreparable harm in a deteriorating circumstance created by the defendant and to preserve the court's ability to enter ultimate relief on the merits of the same kind.'  Thus, the Court will treat Calvary's motion with more caution because it requests mandatory relief." (internal citations omitted) (quoting *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 526 (4th Cir. 2003) (citing *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980))));

*Cornwell v. Sachs*, 99 F. Supp. 2d 695, 704 (E.D. Va. 2000) ("a preliminary injunction that affords the movant substantially all the relief he may recover at the conclusion of a full trial on the merits" is "disfavored." (quoting *Tiffany v. Forbes Custom Boats, Inc.*, No. 91-3001, 1992 U.S. App. LEXIS 6268, at *21 (4th Cir. Apr. 6, 1992) (per curiam))).   *See also*, *Lux v. Rodrigues*, 131 S. Ct. 5, 6 (2010) (Roberts, C.J., Circuit Justice) (applying an "indisputably clear" standard to an emergency motion for injunction intended to place plaintiff on ballot); *GTE Corp. v. Williams*, 731 F.2d 676, 678-79 (10th Cir. 1984) ("The burden on the party seeking a preliminary injunction is especially heavy when the relief sought would in effect grant plaintiff a substantial part of the relief it would obtain after a trial on the merits.").   Because he is moving for what amounts to a preliminary, mandatory injunction that seeks to alter rather than maintain the status quo, it is insufficient for plaintiff to merely demonstrate the likelihood of success on the merits.   To satisfy the heightened standard, he must demonstrate that he is virtually certain to prevail.   This he simply cannot do.

## II.     ARGUMENT

### A.     Numeric Requirements - Likelihood of Success on the Merits.

Although plaintiff and intervenors mount a perfunctory challenge to the numeric requirements of Va. Code Ann. § 24.2-545B in Count II of their Complaints (Doc. 1 at 6; Doc. 28 at 8-9), the validity of such requirements is assumed in the very cases they cite in Count I. (Doc. 1 at 5-6, ¶¶ 25-26; Doc. 28 at 7-8, ¶¶ 37-38).   Numeric requirements ensuring minimal popular support are presumptively valid because they historically provide the core for ballot access requirements.   "During the nineteenth century, a presidential voter actually selected a party-prepared candidate list, casting it in full view of others."   Michael S. Lewis-Beck & Peverill Squire, *The Politics of Institutional Choice:  Presidential Ballot Access for Third Parties*

*in the United States*, 25 B.J. Pol. S. 419 (1995).  With the adoption of the Australian ballot - a process completed by the turn of the twentieth century - practical questions arose.  *Id.*  "With the state itself responsible for the ballot, how should it decide which candidates to list?"  *Id.*  An obvious answer was to require successful circulation of ballot access petitions.  Not only is this requirement routinely upheld as conceptually valid, but numeric requirements far larger than those required by Virginia have been upheld even for minor party candidates seeking general election ballot access who have far less automatic support than viable major party candidates.  *See, e.g.*, *Storer v. Brown*, 415 U.S. 724, 726-27 (1974) (5% of vote cast in previous general election); *Am. Party of Tex. v. White*, 415 U.S. 767, 783 (1974) (22,000 signatures); *Jenness v. Fortson*, 403 U.S. 431, 438-39 (1971) (5% of registered voters); *Rainbow Coal. of Okla. v. Okla. State Election Bd.*, 844 F.2d 740, 741 (10th Cir. 1988) (5% of votes cast).  *See also*, *Munro v. Socialist Workers Party*, 479 U.S. 189, 194-95 (1986) ("We have never required a State to make a particularized showing of the existence of voter confusion, ballot overcrowding, or the presence of frivolous candidacies prior to the imposition of reasonable restrictions on ballot access.").  By way of comparison, Virginia's requirement of 10,000 valid signatures is only 56% of the average requirement for general election ballot access for all fifty states as reported in the mid-1990's.  Lewis-Beck & Squire, 25 B.J. Pol. S. at 420.

Given history and precedent, plaintiff and intervenors are unable to demonstrate the requisite likelihood of success on the merits.  Indeed, the challenge is too insubstantial to warrant consideration of the other *Winter* factors bearing on entitlement to an injunction against the numeric requirements.

With respect to the residency/voter eligibility challenge, this Court should not even reach the *Winter* factors on the principal relief sought both because of lack of standing and the bar of laches.

**B.      Plaintiff and Intervenors Lack Standing.**

Article III of the Constitution limits the judicial power of the United States to actual cases and controversies.  U.S. Const. art. II, § 2, cl. 1.  An essential element of the case or controversy requirement is individual standing.   Personal standing requires (1) the demonstration of a "'distinct and palpable injury,'" (2) "a 'fairly traceable' causal connection between the claimed injury and the challenged conduct," and (3) a "substantial likelihood" that the injury is redressable by the relief requested.  *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 72, 75 n.20 (1978).  *See also*, *Lewis v. Casey*, 518 U.S. 343, 358 (1996) ("standing is not dispensed in gross").  Plaintiff's claim and the claims of the intervenors fail for want of an injury, fairly traceable to the residency/voter eligibility requirement.

With respect to injury, plaintiff and intervenors are not alleged to have been at any time ready, willing, able or even desirous of exercising their claimed First Amendment rights to employ nonresidents until after the deadline for submitting petitions had passed.   As a consequence, their claims of injury are merely abstract and hypothetical.  *Massachusetts v. Mellon*, 262 U.S. 447, 484-85 (1923) (Courts will not decide abstract claims of right.).  *See also, Lewis*, 518 U.S at 357-58 (No standing to obtain injunction mandating "special services or special facilities required by non-English speakers, by prisoners in lockdown, and by the inmate population at large" as the only injury found after trial was to a prisoner who was not a member of any of these classes).[1]

---

[1] Speaker Gingrich made no attempt to challenge the residency/voter eligibility requirement before the deadline or to employ nonresidents.  He intended to use qualified circulators and has publicly attributed the defeat of his plans to

With respect to traceability, plaintiff and intervenors are not being denied a place on the ballot because of the circulator residency/voter eligibility requirement. They are being denied a place on the ballot because they did not meet the constitutionally sound requirement of submitting 10,000 valid signatures by the constitutionally valid deadline. This circumstance also makes the claims of plaintiff and intervenors nonredressable. *See Mirant Potomac River, LLC v. EPA*, 577 F.3d 223, 226 (4th Cir. 2009) (No standing because injury "flow[ed] from Virginia's Nonattainment Provisions" and hence could "not be fairly traced to EPA's approval of Virginia's CAIR SIP"); *Muntaqim v. Coombe*, 449 F.3d 371, 376 (2d Cir. 2006) (en banc) (per curiam) (holding that an inmate's "inability to vote in New York arises from the fact that he was a resident of California, not because he was a convicted felon subject to the application of New York Election Law," and thus that "he has suffered no 'invasion of a legally protected interest'" as a result of his felon status, as "there is no causal connection between New York Election Law . . . and [the inmate's] inability to vote in New York, and a favorable decision of this Court on his claim that New York Election Law . . . violates the VRA would do nothing to enfranchise him." (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992))); *Interactive Media Entm't & Gaming Ass'n v. Holder*, No. 09-1301, 2011 U.S. Dist. LEXIS 23383, at *15-17 (D.N.J. Mar. 7, 2011) (holding that certain plaintiffs lacked standing to challenge the constitutionality of a federal gambling prohibition on the ground "that a favorable ruling would not redress plaintiffs' asserted injury. If PASPA were found unconstitutional, New Jersey law would still prohibit the sports gambling activities plaintiffs and their members seek to legalize."). *See also*, *Lewis*, 518 U.S. at 357, 360 (The scope of injunctive relief for a constitutional violation may not exceed the scope of the violation itself.).

---

the fact that 1,500 out of 11,050 signatures gathered were fraudulently generated by a resident circulator. (See Exhibit A; Doc. 28 at 5, ¶ 27).

**C.      The Motion for a Preliminary Injunction is Barred by Laches.**

Plaintiff and intervenors were permitted to collect signatures for ballot access between July 1, 2011, and December 22, 2011.  (Doc. 1, ¶¶ 11-12; Doc. 23, ¶¶ 11-12).

"Plaintiff declared himself a candidate for the Office of President of the United States on August 13, 2011."  (Doc. 1 at 4, ¶ 15; Doc 23at 3, ¶ 15).  Although he "filed his Statement of Candidacy with the Federal Elections Commission" on August 15, 2011, Plaintiff did not sign "his Declaration of Candidacy for the Commonwealth of Virginia" until October 31, 2011.  (Doc. 1 at 4, ¶¶ 16-17; Doc. 23 at 3, ¶¶ 16-17).  On December 22, 2011, plaintiff submitted petition signatures to the State Board of Elections even though they fell short of the 10,000 required.  (Doc. 1, ¶ 18; Doc. 23 at 3, ¶ 18).  Plaintiff filed this suit on December 27, 2011, less than two weeks before the deadline for printing ballots.  (Doc. 1; Doc. 22 at 2).

Intervenors Gingrich, Huntsman and Santorum announced for the presidency on May 11, June 21 and June 6, 2011, respectively.  (Doc. 28 at 5, ¶¶ 19-21).  They filed their respective statements with the Federal Election Commission on May 16, June 28, and June 6, 2011.  (Doc. 28 at 5, ¶¶ 22-24).  Gingrich and Santorum allege that they signed their Virginia Declarations of Candidacy on December 22, 2011 (Doc. 28 at 5, ¶ 25), although Santorum's declaration was never filed with the State Board of Elections.  (Doc. 31 at 3, ¶ 25).  Intervenors filed their Complaint on January 4, 2012, five days before the last practical day for printing ballots.  (Doc. 28).

Applications for a preliminary injunction granting ballot access that threaten to disrupt an orderly election have been routinely refused in the Supreme Court.  *Fishman v. Schaffer*, 429 U.S. 1325, 1330 (1976) (Marshall, J., Circuit Justice) (denying ballot access injunction in part on the ground that "applicants delayed unnecessarily in commencing the suit" until "[t]he Presidential and overseas ballots ha[d] already been printed; some ha[d] been distributed[, and

t]he general absentee ballots [we]re currently being printed"); *Westermann v. Nelson*, 409 U.S. 1236, 1236-37 (1972) (Douglas, J., Circuit Justice) (denying injunction "not because the cause lacks merit but because orderly election processes would likely be disrupted by so late an action."). *See also, Lux*, 131 S. Ct. at 7 (denying election access injunction). Lower courts routinely deny ballot access injunctions in such circumstances based upon the equitable doctrine of laches. *See, e.g.*, *Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990) (holding that a challenge to "an election irregularity which has been a matter of public record for eleven weeks prior to an election must be barred [by laches] when a plaintiff files suit three weeks before the election," after "the state [had] printed ballots, and commenced absentee balloting"); *Kay v. Austin*, 621 F.2d 809, 813 (6th Cir. 1980) (holding that a candidate for President was "not entitled to [the] equitable relief" of having his name placed on the state's May 20th presidential primary ballot "as a result of laches" where the candidate filed suit on March 31 after "all the necessary preliminary work had been done for the paper ballots, voting machine strips, and punch cards"); *McClafferty v. Portage Cnty. Bd. of Elections*, 661 F. Supp. 2d 826, 839-41 (N.D. Ohio 2009) (denying preliminary and permanent injunctive relief sought against the balloting of an ordinance amendment on the ground that the challenge was "likely barred by the doctrine of laches" as "[v]oting machines ha[d] been programmed and 'locked down,' paper ballots for the absentee voters ha[d] been printed, and printed ballots for absent members of the armed forces ha[d] already been mailed."); *Libertarian Party of Conn. v. Bysiewicz*, No. 3:08-cv-1513, 2008 U.S. Dist. LEXIS 97970, at *27-31 (D. Conn. Dec. 2, 2008) (denying a motion for preliminary injunction to have plaintiff-candidates' names placed on a general election ballot because the claim "would be barred by the defense of laches" on the ground that the motion was not filed until two and a half weeks before the election, after election preparations had been completed);

*Dobson v. Dunlap*, 576 F. Supp. 2d 181, 187-88 (D. Me. 2008) (denying a motion for preliminary injunction to have a candidate's name appear on the ballot for the United States Senate because the challenge to the nomination petition process was barred by laches when presented nearly two months before the election, after "the printer had already begun the ballot printing process"); *see also, Herndon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983) (affirming the denial of a recount based on a challenge to the constitutionality of certain state ballot regulations on the ground that the challengers failed to perform their "duty . . . to bring their complaints forward for pre-election adjudication").

**D.      The Motion for a Preliminary Injunction Against the Residency/Voter Eligibility Requirements Fails Under the Applicable Factors.**

**1.      Plaintiff and Intervenors Cannot Demonstrate the Requisite Likelihood of Success on the Merits.**

There is clear and recent authority from the Fourth Circuit and the Chief Justice sitting as Circuit Justice that plaintiff and intervenors cannot satisfy the elevated standard of demonstrating likelihood of success on the merits applicable to a preliminary, mandatory injunction.  Here, plaintiff and intervenors claim that the voter eligibility requirement of Va. Code Ann. § 24.2-545B is an unconstitutional burden on political speech, citing *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182 (1999); *Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023 (10th Cir. 2008); *Nader v. Blackwell*, 545 F.3d 459 (6th Cir. 2008); *Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008); *Chandler v. City of Arvada*, 292 F.3d 1236 (10th Cir. 2002); *Lerman v. Bd. of Elections in the City of New York*, 232 F.3d 135 (2d Cir. 2000); *Krislov v. Rednour*, 226 F.3d 851 (7th Cir. 2000); *Bogaert v. Land*, 572 F. Supp. 2d 883 (W.D. Mich. 2008); *Frami v. Ponto*, 255 F. Supp. 2d 962 (W.D. Wis. 2003); *Morrill v. Weaver*, 224 F. Supp. 2d 882 (E.D. Penn. 2002). (Doc. 1 at 5-6, ¶¶ 25-28; Doc. 28 at 7-8, ¶¶ 37-38). The plaintiff in *Lux v. Rodrigues*, 736 F. Supp. 2d 1042 (E.D. Va. 2010), made substantially the same argument based upon substantially

the same case authority in challenging the requirement of Va. Code Ann. § 24.2-506 that congressional petition circulator/witnesses be voter qualified in the Congressional district at issue. Lux lost in the district court because the Fourth Circuit had upheld similar requirements in *Libertarian Party of Va. v. Davis*, 766 F.2d 865 (4th Cir. 1985), on the ground that the requirement ensures a modicum of activist support in the relevant jurisdiction. *Lux*, 736 F. Supp. 2d at 1049-50. Lux then filed an Emergency Motion for Preliminary Injunction in the Fourth Circuit. (Case: 10-1997, Doc. 8). When that motion was denied (Case: 10-1997, Doc. 22), Lux sought relief from Chief Justice Roberts as Circuit Justice for the Fourth Circuit.

Chief Justice Roberts denied the motion making three points of significance for the present case. First, he found that an elevated "indisputably clear" legal standard applied to injunctions from a circuit justice. *Lux*, 131 S. Ct. at 6. This is not unlike the elevated standard for preliminary, mandatory injunctions which seek to obtain all the relief preliminarily which could be had after trial. Second, he noted that "we were careful in *American Constitutional Law Foundation* to differentiate between registration requirements, which were before the Court, and residency requirements, which were not." *Id.* at 7. In fact, the Supreme Court has never ruled on residency requirements. Third, the Chief Justice recognized that the lower court cases upon which both Lux and plaintiff here have relied are part of a circuit split. *Id.* That circuit split persists. *See Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614, 615-17 (8th Cir. 2001) (upholding state residency requirement) (citing *Kean v. Clark*, 56 F. Supp. 2d 719, 728-29, 732-34 (S.D. Miss. 1999) and *Initiative & Referendum Inst. v. Secretary of State*, No. Civ. 98-104-B-C, 1999 U.S. Dist. LEXIS 22071 (D. Me. Apr. 23, 1999)); *see also Hart v. Secretary of State*, 715 A.2d 165, 168 (Me. 1998) (upholding state residency requirements). When the Fourth Circuit decided *Lux* on the merits, it held that *Davis* had been sufficiently undercut that its

rationale of guaranteeing a modicum of activist support was no longer controlling. *Lux v. Judd*, 651 F.3d 396, 398, 402, 404 (4th Cir. 2011).   Even so, the Fourth Circuit did not find that Lux's challenge was so clear as to entitle him to relief against the in-district witness requirement on appeal.  Indeed, it said the opposite:

> Our recognition that *Davis*' abbreviated residency-requirement analysis has been superseded should not be confused for a determination that the provision challenged here offends Lux's constitutional rights.  Neither *Meyer* nor *Buckley* addressed the particular witness residency requirement at issue in this case. Moreover, we do not read either decision as foreclosing the possibility that something more than a threshold signature requirement may, in some circumstances, be constitutionally permissible as a means of ensuring popular support or achieving another state interest.

*Id.* at 404.  The Fourth Circuit further noted that on remand "[b]oth parties are free to advance additional arguments in light of our holding."  *Id.*

Sufficient reasons for the state residency/voter eligibility requirement at issue here are not hard to find because they have been posited by the Supreme Court itself.   In *American Constitutional Law Foundation*, the Supreme Court struck down a voter registration requirement because an unchallenged state residency requirement more narrowly served the same putative state interest, saying "[i]n sum, assuming that a residence requirement would be upheld as a needful integrity policing measure -- a question we, like the Tenth Circuit, have no occasion to decide because the parties have not placed the matter of residence at issue -- the added registration requirement is not warranted."   525 U.S. at 197 (internal citation omitted).   The Supreme Court in dicta also approved of a voter eligibility requirement as a more narrow substitute for a voter registration requirement, specifically noting that a voter eligibility requirement could be used as a proxy to weed out felons, minors and illegal aliens.  *Id.* at 195 n.16 ("Persons eligible to vote, we note, would not include 'convicted drug felons who have been denied the franchise as part of their punishment, . . . .  Even more imaginary is the dissent's

suggestion that if the merely voter eligible are included among petition circulators, children and citizens of foreign lands will not be far behind.").

In light of *American Constitutional Law Foundation*, and the treatment of the *Lux* case in the Fourth Circuit and in the Supreme Court, it is simply not possible for plaintiff or the intervenors to demonstrate the near certainty of success required of them. Indeed, they cannot even satisfy the ordinary *Winter* standard. Not only has the Supreme Court intimated that residency/voter eligibility requirements are valid, but *American Constitutional Law Foundation* and its predecessor, *Meyer v. Grant*, 486 U.S. 414 (1988), are ballot initiative cases. And in such cases "[t]he circulation of an initiative petition of necessity involves both the expression of a desire for political change and a discussion of the merits of the proposed change." *Meyer*, 486 U.S. at 421. This distinction matters.

> Initiative-petition circulators, the Tenth Circuit recognized, resemble handbill distributors, in that both seek to promote public support for a particular issue or position. Initiative-petition circulators also resemble candidate-petition signature gatherers, however, for both seek ballot access.

*American Constitutional Law Foundation,* 525 U.S. at 190-91 (internal citation omitted). With respect to the latter aspects, "States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process, as they have with respect to election processes generally." *Id.* at 191. And the Court assumed, without deciding, that the need to have circulators within the state subpoena power falls within that broad leeway. *Id.* at 196-97. Even with respect to the handbill type aspects of ballot initiative petitioning, the Supreme Court has said that "'no litmus-paper test' will separate valid ballot-access provisions from invalid interactive speech restrictions; we have come upon 'no substitute for the hard judgments that must be made.'" *Id.* at 192 (quoting *Storer*, 415 U.S. at 730).

11

Because the Supreme Court has never invalidated a statewide residency/voter eligibility requirement and has never invalidated a circulator requirement outside of initiative cases, the lower court cases upon which plaintiff and intervenors rely which relate to initiative or less than state-wide residency/voter eligibility requirements are readily distinguishable. *See Yes on Term Limits, Inc.*, 550 F.3d 1023 (ballot initiative); *Chandler*, 292 F.3d 1236 (city-residency requirement); *Lerman,* 232 F.3d 135 (district-residency requirement); *Bogaert,* 572 F.Supp.2d 883 (W.D. Mich. 2008) (district-residency requirement); *Frami v. Ponto*, 255 F. Supp. 2d 962 (district-residency requirement); *Morrill*, 224 F. Supp. 2d 882 (district-residency requirement). Of the cases cited by plaintiff and intervenors, three remain to be considered.

*Nader v. Blackwell*, 545 F.3d 459 (6th Cir. 2008), is procedurally complex in two separate ways. First, prior to the 2004 election, Ralph Nader was removed from the Ohio ballot after 2,700 signatures were invalidated.

> In October 2004, a federal district court denied Nader's request for injunctive relief, the state courts denied his request for mandamus relief, and [the Sixth Circuit] denied his emergency appeal. In November 2005, [the Sixth Circuit] dismissed his regular appeal as moot.

*Blackwell*, 545 F.3d at 462. Then, in 2006, Nader sued Blackwell, Ohio's Secretary of State during the 2004 election, under § 1983 for nominal damages. *Id.* at 462, 469.

The district court never reached the constitutional merits but dismissed on standing, qualified immunity and absolute immunity. *Id.* at 462. Despite affirming the district court on qualified immunity, the Sixth Circuit purported to reach the constitutional merits *vel non* and to declare the candidate ballot access voter registration and residency requirements unconstitutional. *Id.* at 462, 474, 477-78.

Locating the opinion of the Court is also complex. Judge Moore wrote a one-paragraph opinion in which she said: "I also concur in Judge Clay's opinion, making his opinion the

opinion of the court.  Judge Clay joins my opinion, making this the opinion of the court." *Id.* at 478.  Judge Clay wrote a four-paragraph opinion in which he disagreed with Chief Judge Bogg's statement "that [t]his suit is a civil action for money damages against Blackwell in his personal capacity.  It is not another chance for Nader to litigate the constitutionality of § 3503.6, the constitutionality of which is being challenged directly in other cases." *Id.* Judge Clay also limited his adoption of Judge Moore's opinion:  "I join Chief Judge Bogg's opinion only insofar as it does not conflict with the views expressed in this concurring opinion and Judge Moore's concurring opinion." *Id.* at 479.  From Chief Judge Bogg's opinion - which, in this respect, does not contradict the concurring opinions and is the opinion of the Court - we learn that the registration/residency requirement was at the county and precinct level.  *Id.* at 467 n.2.  Thus, *Blackwell* turns out to be another distinguishable district residency case, in which there was no occasion for the court to consider the justifications for statewide residency and voter eligibility discussed in *American Constitutional Law Foundation*.

*Krislov v. Rednour*, 226 F.3d 851, 855 (7th Cir. 2000), involves both district and statewide registration requirements.  Because it is a registration case there was no occasion to consider the justifications for statewide residency and voter eligibility requirements discussed by the Supreme Court nor were they raised by defendants.  *Id.* at 863-66.

Plaintiff and intervenors have exactly one case from the Ninth Circuit on point and in their favor.  In *Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008), a statewide residency/voter eligibility requirement was found unconstitutional because the state interest in having circulators subject to subpoena could have been accomplished through the more narrow means of requiring out-of-state circulators to consent to state jurisdiction.  *Id.* at 1037-38.  This illustrates why the Supreme Court distinguished between initiatives and ordinary ballot access in *American*

*Constitutional Law Foundation*:  if every ballot integrity provision is subject to strict scrutiny it will always be possible to think of some alternative requirement that is arguably more narrow. This is not what the Supreme Court intends.

> It has never been suggested that the [Supreme Court's case law] automatically invalidates every substantial restriction on the right to vote or to associate. Nor could this be the case under our Constitution where the States are given the initial task of determining the qualifications of voters who will elect members of Congress. Art. I, § 2, cl. 1. Also Art. I, § 4, cl. 1, authorizes the States to prescribe "the Times, Places and Manner of holding Elections for Senators and Representatives." Moreover, as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes. In any event, the States have evolved comprehensive, and in many respects complex, election codes regulating in most substantial ways, with respect to both federal and state elections, the time, place, and manner of holding primary and general elections, the registration and qualifications of voters, and the selection and qualification of candidates.  It is very unlikely that all or even a large portion of the state election laws would fail to pass muster . . . .

*Storer*, 415 U.S. at 729-30.  "[T]he State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions," *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983), including on the process by which candidates are placed on the ballot.  *See Am. Party of Tex.*, 415 U.S. at 783-84.

A State is not required to use the least restrictive means "'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'"  *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989) (quoting *United States v. Albertini,* 472 U.S. 675, 689 (1985)).  *Brewer* thus is seen to stand on a doubtful foundation inasmuch as direct subpoena authority is more effective than an undertaking to be subject to out-of-state jurisdiction.  And, of course, *Brewer* does not even discuss the important interests that a voter eligibility requirement advances in avoiding the use of felons, children and illegal aliens as petition circulators.  *American Constitutional Law Foundation*, 525 U.S. at 195 n.16.

*Brewer* cannot satisfy plaintiff's burden of demonstrating the requisite likelihood of success on the merits. In the first place, it is directly contradicted by a decision from the Eighth Circuit as *Brewer* itself recognizes. *Brewer*, 531 F.3d at 1036-37 (citing *Jaeger*, 241 F.3d at 617.) Even more decisively when *Brewer* was presented to the Fourth Circuit and the Chief Justice in *Lux* it was found to be insufficient to entitle *Lux* to relief.. The constitutionality of statewide residency/voter eligibility requirements has been assumed by the Supreme Court, and neither plaintiff nor intervenors can demonstrate a near certainty of success on the merits because the question is from their point of view is at best unsettled.

### 2.    Plaintiff and Intervenors Cannot Demonstrate Irreparable Harm.

As demonstrated in section II B, plaintiff and intervenors have suffered no palpable personal injury from the residency/voter eligibility requirements of Va. Code Ann. § 24.2-545 B because they elected, in the case of plaintiff, and intervenors Gingrich and Santorum, to attempt to comply with that statute. Only after they failed did they mount a challenge. Intervenor Huntsman, of course, did nothing either to challenge or comply. Under these circumstances their ability to obtain 10,000 signatures with non-resident circulators could only be based on speculation and surmise and the direct cause of their inability to get on the ballot is the constitutionally unassailable numeric requirement of the statute. Hence, plaintiff and intervenors can demonstrate no redressable injury at all, let alone irreparable harm. Furthermore, their claim of irreparable harm collapses back into their inability to demonstrate the requisite likelihood of success on the merits.

The substantial likelihood, or the fact, of a violation of constitutional right, whether of equal protection or of speech and association, do not alone establish irreparable harm and thus justify the granting of a preliminary injunction. *See Siegel v. LePore*, 234 F.3d 1163, 1177-78

(11th Cir. 2000).  Where the party seeking preliminary relief has not shown a likelihood of success on the merits, that there may be an irreparable injury to the alleged right, even a constitutional one, does not justify preliminary relief.  *See Duke v. Cleland*, 954 F.2d 1526, 1529, 1533 (11th Cir. 1992); *see also Patton v. Democratic Town Comm.*, 253 Fed. Appx. 129, 131 (2d Cir. Nov. 6, 2007).  And a party's delay in bringing suit to correct a ballot access issue will not provide the basis for a later claim of irreparable harm.  *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993).

### 3.    The Balance of Equities and Consideration of the Public Interest Favor Defendants.

It is well established that "where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief" in cases challenging the constitutionality of state election procedures.  *Reynolds v. Sims*, 377 U.S. 533, 585 (1964).  Thus, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter,* 555 U.S. at 20; *see Real Truth About Obama, Inc. v. FEC,* 575 F.3d 342, 346 (4th Cir. 2009) (holding that "all four requirements must be satisfied" under *Winter*).  "In awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles."  *Reynolds,* 377 U.S. at 585.  For "a federal court cannot lightly interfere with or enjoin a state election.  The decision to enjoin an impending election is so serious that the Supreme Court has allowed elections to go forward even in the face of an undisputed constitutional violation."  *Sw. Voter Registration Educ. Project v. Shelley,* 344 F.3d 914, 918 (9th

Cir. 2003) (internal citation omitted), *overruled on other grounds, Winter,* 555 U.S. at 22. Courts have routinely refused preliminary relief where the result would be the disruption and delay of imminent elections on the ground that the public interest would be disserved.  *See, e.g., Respect Maine PAC v. McKee,* 622 F.3d 13, 16 (1st Cir. 2010); *Valenti v. Mitchel,* 962 F.2d 288, 298-302 (3d Cir. 1992); *Ariz. Minority Coal. for Fair Redistricting v. Ariz. Indep. Redistricting Comm'n,* 366 F. Supp. 2d 887, 907-10 (D. Ariz. 2005); *Green Party v. Weiner*, No. 00CIV6639, 2000 U.S. Dist. LEXIS 12963, at *8-9 (S.D.N.Y. Sept. 8, 2000); *Cardona v. Oakland Unified Sch. Dist.,* 785 F. Supp. 2d 837, 842-4 (N.D. Cal. 1992).

The witnesses to be called will establish that any relief given at this late date would cause Virginia to violate state and federal statutes as well as a consent decree issued by this Court. Any injunctive relief would also cause voter confusion, increase expense and threaten to disrupt the election.

While these burdens, in and of themselves, are sufficient to tilt the balance of the equities against entry of an injunction, the fact that delays occasioned by plaintiff and intervenors have either caused or exacerbated these burdens further tilts the balance of the equities against the entry of an injunction.  The Fourth Circuit has recognized that it is appropriate to consider delays occasioned by a party seeking an injunction in determining whether or not to grant the injunction.  *Quince Orchard Valley Citizens Ass'n v. Hodel,* 872 F.2d 75, 79-80 (4th Cir. 1989) (the fact that a party seeking an injunction delayed doing so is "quite relevant to balancing the parties' potential harms.").

**E.      The New Theories Raised in the First Amended Complaint**

A week and a day before the scheduled preliminary injunction hearing plaintiff filed a First Amended Complaint.  While such a filing is generally authorized by Fed.R.Civ.P. Rule

15(a)(1)(A), the amendment is contrary to the letter and spirit of the compressed schedule governing this preliminary injunction proceeding, which neither envisions nor accommodates any such filing.

Count 2 of the First Amended Complaint alleges that the form used for signature collection, SBE-545, was void because it was not pre-cleared under Section 5 of the Voting Rights Act of 1965, as amended. 42 U.S.C. § 1975c. Although this Court is authorized to "grant a temporary restraining order on a specific finding, based on evidence submitted, that specified irreparable damage will result if the order is not granted," that order, unless previously revoked by the district judge, shall remain in force only until the hearing and determination by the district court of three judges of an application for a preliminary injunction." 28 U.S.C. § 2284(b)(3). There is, of course, no basis for entering a TRO because the use of the form for gathering signatures has already occurred. On the other hand, a preliminary injunction can only be granted by a three-judge court. *Id.* However, before the Court should request the Chief Judge of the Fourth Circuit to appoint a three-judge court, it should determine whether the voting rights claim is substantial. *Simkins v. Gressette,* 631 F.3d 287 (4th Cir. 1980). This Court cannot make that determination until the parties are at issue. Defendants anticipate filing a motion to dismiss premised on the fact that SBE-545 was pre-cleared in 1999. Although Defendants are still attempting to obtain a copy of the 1999 form from off-sight storage of the Virginia State Library, it is believed that any changes to the form since 1999 either reflect statutes which were themselves pre-cleared or are too immaterial to have any effect on the lawful use of the form even if those changed provisions are deemed void.

Plaintiff's other new claim that the word "may" in Va. Code Ann. § 24.2-545B is permissive and not mandatory would deprive the statute of meaning and effect and thereby

produce an absurd result. (Doc. 30 at 8, Count 1).  The fact that plaintiff now thinks that this is his best argument merely serves to illustrate the parlous state of his case.

Virginia law provides that "[a]ny person seeking the nomination of the national political party for the office of President of the United States, or any group organized in this Commonwealth on behalf of, and with the consent of such person, may filed with the State Board petitions signed by at least 10,000 qualified voters, including at least 400 qualified voters from each congressional district in the Commonwealth, who attest that they intend to participate in the primary of the same political party as the candidate for whom the petitions are filed." Code § 24.2-545B.  Plaintiff absurdly contends, focusing on the word "may" to the exclusion of the remainder of the statute, that signature collection is merely optional.  (Doc. 30, at 8-10). Plaintiff presses this extravagant construction despite the clear language of that subsection that directs the "state chairman of the [candidate's] party" to "furnish to the State Board the names of all candidates who have satisfied the *requirements* of this section," and, again, provides that, "[w]henever only one candidate for a party's nomination for President of the United States has met the *requirements* to have his name on the ballot, he will be declared the winner and no presidential primary for that party will be held."   Code § 24.2-545B (emphases added). Although it is surely correct that "the word 'shall' is primarily mandatory in its effect and the word 'may' is primarily permissive," *Ross v. Craw,* 231 Va. 206, 212, 343 S.E.2d 312, 316 (1986), that general rule of construction does not govern here.

We note at the outset that "there are several cases in which the word 'may' have been construed to mean 'must' or 'shall . . . .'" *Spindel v. Jamison,* 199 Va. 954, 957, 103 S.E.2d 205, 208 (1958).  *See, e.g., Harper v. Va. Dep't of Taxation,* 250 Va. 184, 194, 462 S.E.2d 892, 898 (1995); *Caputo v. Holt,* 217 Va. 302, 305, 228 S.E.2d 124, 137 (1976); *Leigton v. Maury,* 76 Va.

865, 870 (1882).  *See also Supervs. of Botetourt Cnty. v. Cahoon,* 121 Va. 768, 773-79, 94 S.E.

340, 341-43 (1917) (collecting cases).  And, as the Fourth Circuit has noted, in following suit,

"the Virginia Supreme Court recently interpreted the term 'may' to be mandatory, despite the

inclusion of the word 'shall' elsewhere within that same statute."  *Planned Parenthood v.

Camblos,* 155 F.3d 352, 382-83 (4th Cir. 1998) (citing *Harper,* 250 Va. at 194, 462 S.E.2d at

898).  And, in other contexts, as plaintiff noted, the Supreme Court of Virginia has interpreted

the term may as permissive.  (Doc. 30, at 9) (citing *Zinone v. Lee's Crossing Homeowners Ass'n,*

282 Va. 330, 336-38, 714 S.E.2d 922, 924-26 (2011).

Always, however, these courts, whether adopting a mandatory or permissive reading of

'may,' have rejected the tone-deaf approach employed by plaintiff, and have, "'in endeavoring to

arrive at the meaning of written language, whether used in a will, a contract, or a statute, . . .

construe[d] 'may' and 'shall' as permissive or mandatory in accordance with the subject matter

and context.'"  *Ross,* 231 Va. at 212, 343 S.E.2d at 316 (quoting *Pettus v. Hendricks,* 113 Va.

326, 330, 74 S.E. 191, 193 (1912)); *see Masters v. Hart,* 189 Va. 969, 979, 55 S.E.2d 205, 210

(1949) ("[T]he word 'may,' while ordinarily importing permission, will be construed to be

mandatory when it is necessary to accomplish the manifest purpose of the legislature."); *accord

Harper,* 250 Va. at 194, 462 S.E.2d at 898; *Caputo,* 217 Va. at 305, 288 S.E.2d at 137.  In

general, "a statute should never be construed in a way that leads to absurd results," *Meeks v.

Commonwealth,* 274 Va. 798, 802, 61 S.E.2d 637, 639 (2007), or "renders any portion of [an]

enactment useless," and, "in a dispute that involves a number of related [provisions], we will

read and construe them together in order to give full meaning, force, and effect to each."

*Antisdel v. Ashby,* 279 Va. 42, 48, 688 S.E.2d 163, 166 (2010).  As only a reading that treats

"may" as mandatory fulfills the purpose of the statute, gives meaning to all the terms of the

enactment, and harmonizes with its context, and subsection B's reference to the "requirements of this section," it should be adopted.

The manifest purpose of the legislature in enacting the statute entitled "Presidential primary" was to provide a means by which persons could hold themselves forth for "the nomination of [a] national political party for the office of President of the United States," Code § 24.2-55B, and achieve the "important state interest [of] requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot -- the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election." *Storer,* 415 U.S. at 732. Like the Supreme Court, the Virginia General Assembly has recognized that "there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Id.* at 729-30. A reading that treats the whole exercise as optional runs counter to the entire purpose of the enactment.

Of course, we do not contest that the use of the term "may" has a permissive connotation as well in the statute. Rather, it is clear that not all persons "seeking the nomination of the national political party for the office of President of the United States" are required by Virginia law to "file with the State Board petitions signed by at least 10,000 qualified voters, including at least 400 qualified voters from each congressional district in the Commonwealth, who attest that they intend to participate in the primary of the same political party as the candidate for whom the petitions are filed." Code § 24.2-545B. Not all constitutionally qualified persons are directed, or even invited, to offer themselves as candidates for President of the Virginia Presidential primaries, *see* U.S. Const. art. II, § 1, nor are all persons who have elsewhere sought the office mandated by Virginia law to participate in a Virginia presidential primary. However, if those

persons so desire to do so, they "may file with the State Board petitions signed by at least 10,000 qualified voters, including at least 400 qualified voters from each congressional district in the Commonwealth, who attest that they intend to participate in the primary of the same political party as the candidate for whom the petitions are filed."  Code § 24.2-545B.  And only "the names of all candidates who have satisfied the *requirements* of this section" "shall appear on the ballot" of the "presidential primary for that party."  Code § 24.2-545B and C (emphasis added).  Accordingly, if the Court chooses to consider the legal theory plaintiff has so lately fashioned, it should conclude that plaintiff has failed to make the requisite showing of likelihood of success on the merits.  He also fails to demonstrate irreparable harm or that the balance of equities and the public interest favor his position for the reasons discussed at length above.

**CONCLUSION**

In this circuit, plaintiff is required to satisfy all four preliminary injunction factors in order to qualify for a preliminary injunction.  *The Real Truth About Obama*, 525 F.3d at 346.  Because plaintiff has failed to satisfy any of them, the Motion for a Preliminary Injunction is due to be denied.

Respectfully submitted,

CHARLES JUDD, KIMBERLY BOWERS and
DON PALMER, in their official capacities


_____/s/_____
E. Duncan Getchell, Jr.
Solicitor General of Virginia
(VSB No. 14156)
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
(804) 786-7240 – Telephone
(804) 371-0200 – Facsimile
dgetchell@oag.state.va.us

22

*Counsel for Defendants Judd,*
*Bowers and Palmer*

Kenneth T. Cuccinelli, II
Attorney General of Virginia

E. Duncan Getchell, Jr., VSB #14156
Solicitor General of Virginia
E-mail:  dgetchell@oag.state.va.us

Wesley G. Russell, Jr., VSB #38756
Deputy Attorney General
E-mail:  wrussell@oag.state.va.us

Joshua N. Lief, VSB # 37094
Senior Assistant Attorney General
E-mail:  jlief@oag.state.va.us

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th day of January, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following counsel of record for Plaintiff and Intervenors:

M. F. Connell Mullins, Jr., Esquire
Hugh M. Fain, III, Esquire
Edward Everett Bagnell, Jr., Esquire
Spotts Fain P.C.
411 East Franklin Street, Suite 600
Richmond, Virginia  23219
Phone:  (804) 697-2040
Fax:  (804) 697-2140
cmullins@spottsfain.com
hfain@spottsfain.com
ebagnell@spottsfain.com
*Counsel for The Honorable Rick Perry*

Joseph M. Nixon, Esquire (*pro hac vice*)
James E. Trainor, III, Esquire (*pro hac vice*)
Martin D. Beirne, Esquire (*pro hac vice*)
Beirne, Maynard & Parsons, L.L.P.
1300 Post Oak Boulevard, Suite 2500
Houston, TX  77056
Phone: (713) 623-0887
Fax: (713) 960-1527
jnixon@bmpllp.com
ttrainor@bmpllp.com
mbeirne@bmpllp.com
*Counsel for The Honorable Rick Perry*

Charles Michael Sims
LeClairRyan, A Professional Corporation
P.O. Box 2499
Richmond, VA 23218-2499
Tel:  (804) 783-2003
charles.sims@leclairryan.com
*Counsel for Pat Mullins, in his official
capacity as Chairman of the Republican
Party of Virginia*

J. Christian Adams, Esquire
Election Law Center, PLLC
300 N. Washington St., Suite 405
Alexandria, VA 22314
Tel: 703-963-8611
Fax: 703-740-1773
adams@electionlawcenter.com

*Counsel for Plaintiff-Intervenor The
Honorable Newt Gingrich*

Stefan C. Passantino, Esquire (*pro hac vice*
to be filed)
J. Randolph Evans, Esquire (*pro hac vice* to
be filed)
Benjamin P. Keane, Esquire (*pro hac vice* to
be filed)
McKenna Long & Aldridge, LLP
1900 K St. NW
Washington, DC 20009
Tel: 202-496-7500
Fax: 202-496-7756
*Counsel for Plaintiff-Intervenor The
Honorable Newt Gingrich*

Craig Engle, Esquire (*pro hac vice* to be
filed)
Arent Fox LLP
1050 Connecticut Avenue, NW
Washington, DC 20036-5339
Tel: 202-857-6000
Fax: 202-857-6395
*Counsel for Plaintiff-Intervenor The
Honorable Jon Huntsman, Jr.*

Cleta Mitchell, Esquire (*pro hac vice* to be filed)
Foley & Lardner LLP
3000 K Street, N.W.
Suite 600
Washington, DC 20007-5109
Tel: 202-672-5300
Fax: 202-672-5399
*Counsel for Plaintiff-Intervenor Rick Santorum*

I further certify that some of the participants in the case are not registered CM/ECF users.

I have mailed one copy of the foregoing document by First-Class Mail to the following non-CM/ECF participant:

Lee Elton Goodman, Esquire
LeClairRyan, P.C.
1101 Connecticut Avenue, NW
Suite 600
Washington, D.C. 20036
Phone:  (202) 659-4140
*Counsel for Pat Mullins, in his official*
*capacity as Chairman of the Republican Party of Virginia*

                                                  /s/
                                        E. Duncan Getchell, Jr.
                                        Solicitor General of Virginia
                                        (VSB No. 14156)
                                        Office of the Attorney General
                                        900 East Main Street
                                        Richmond, Virginia 23219
                                        (804) 786-7240 – Telephone
                                        (804) 371-0200 – Facsimile
                                        dgetchell@oag.state.va.us
                                        *Counsel for Defendants Judd,*
                                        *Bowers and Palmer*