**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | | |
|---|---|---|
| **THE HONORABLE RICK PERRY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **NEWT GINGRICH, JON HUNTSMAN, JR., and RICK SANTORUM** | § | |
| | § | |
| **Intervernor-Plaintiffs** | § | |
| | § | |
| **v.** | § | **Civil No. 3:11-CV-856** |
| | § | |
| **CHARLES JUDD, KIMBERLY BOWERS, and DON PALMER, members of the Virginia Board of Elections, in their official capacities, and PAT MULLINS, in his official capacity as Chairman of the Republican Party of Virginia,** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

## Plaintiff's Response to Defendants' Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction

Plaintiff, The Honorable Rick Perry, submits the following brief in response to Defendants' memorandum in opposition to plaintiff's motion for preliminary injunction.

### Introduction

In his brief filed with the Court on January 6, 2012, Plaintiff clearly established section 24.2-545 B of the Virginia Code violates his constitutional rights. As the District Court noted in its January 10, 2012 Order, "the authorities make clear that circulating petitions for candidates is a form of protected speech, and that the Commonwealth has a heavy burden to justify the restriction on speech by showing not only that the limitation achieves a valid state interest but also that the limitation is no broader in scope than necessary to achieve that purpose."

1

Defendants failed to even attempt meet this burden in their memorandum in opposition to Plaintiff's motion for preliminary injunction, which wholly fails to offer any specific state interest, much less a compelling interest, that justifies the state infringement of Plaintiff's constitutional rights.  Plaintiff addressed the justifications generally cited by states in support of such restrictions of constitutional rights and demonstrated why each of those justifications fail.  For this reason, along with the reasons discussed in Plaintiff's opening brief, Memorandum in Support of its Emergency Motion for Temporary Restraining Order and Preliminary Injunction and herein, the Court should grant Plaintiff's request for injunctive relief and order that Plaintiff's name be placed on the ballot.

### Plaintiff Meets the four *Winter* Factors

A court may issue a preliminary injunction if it determines that: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in the plaintiff's favor, and (4) an injunction is in the public interest. *W. Va. Assoc. of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009) (applying *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 19 (2008)).  Defendants assert Plaintiff must meet even a higher standard and "demonstrate that he is virtually certain to prevail" in the case on the merits.  The case cited by Defendants, *Lux v. Rodriguez*, 131 S.Ct. 177 (2010), does not support this assertion.  Upon meeting the *Winter* factors, the Plaintiff is entitled to injunctive relief.

If the Court finds the injunctive relief requested by Plaintiff is essentially all the relief to which he would be entitled after a trial on the merits, the Court merely analyzes injunctive requests with more caution and analyzes whether the *Winter* factors "weigh heavily" in Plaintiff's favor.  As noted in the Court's January 10, 2012 Order, the Court found a "strong

likelihood" it will find section 24.2-545 B of the Virginia Code unconstitutional; "the harm to

[Plaintiffs] would obviously be irreparable"; and the "public interest . . . weighs heavily in favor

of the plaintiffs."   Accordingly, the Court is already analyzing this case with more caution and

applying the correct legal standards.

**I.**
**Plaintiff is likely to Succeed on the merits.**
**A.**
**Virginia's State Residency Requirement**

As outlined in Plaintiff's brief, the severe burdens Virginia's election law places on

Plaintiff's First Amendment rights subjects the law to an analysis under the strict scrutiny

analysis.   The First Amendment states that "Congress shall make no law . . . abridging the

freedom of speech . . . or the right of the people peaceably to assemble."[1]  U.S. CONST. AMEND. I.

Virginia's state-residency requirement abridges the freedoms of speech and association in

violation of this mandate.  *See e.g. Wash. State Grange v. Wash. State Republican Party*, 128 S.

Ct. 1184, 1191 (2008); *Clingnzan v. Beaver*, 544 U.S. 581, 586 (2005); *Cal. Democratic Party v.

Jones,* 530 U.S. 567, 582 (2000); *Buckley v. American Constitutional Law Foundation, Inc.*, 525

U.S. 182, 192 n.12; *Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 358 (1997); *Burdick

v. Takushi,* 504 U.S. 428, 434 (1992).

Virginia's state-residency requirement abridges Plaintiff's First Amendment speech and

associational rights in at least four ways:

> 1. It impacts his ability to disseminate his political views by restricting the number
>    of message carriers who can gather signatures on his behalf, and in turn, the size
>    of the audience that can be reached. *See Buckley*, 525 U.S. at 194-95
>    (recognizing burden imposed by Colorado law that restricted the number of
>    petition circulators who could disseminate plaintiffs' message, and therefore, the
>    size of the audience that could be reached).

---

[1] The First Amendment is applicable to the states pursuant to the Fourteenth Amendment to the United States
Constitution. *Thornhill v. Alabama*, 310 U.S. 88, 95 (1940).

3

2.  It prevents Plaintiff from choosing what he believes to be the most effective means of conveying his message.  *See Meyer v. Grant*, 486 U.S. 414, 424 (1988) (First Amendment protects person's right to "select what [he] believe[s] to be the most effective means" for advocating his cause).

3.  It restricts Plaintiff's ability to associate in a meaningful way with individuals that sign his petition for the purpose of eliciting political change.  *See id.* at 421-22 (First Amendment protects right to advocate for political change).

4.  It impacts his ability to gain access to the ballot, and therefore, his ability to make his candidacy the subject of nation-wide discussion.  *See id.* at 423 (recognizing burden imposed by Colorado law that limited plaintiffs' ability to make their ballot proposal "the focus of statewide discussion").

The Supreme Court has uniformly held that laws that severely burden speech and association protected by the First Amendment are subject to a strict scrutiny analysis and must be narrowly tailored to serve a compelling governmental interest ("strict scrutiny"). *Wash. State Grange v. Wash. State Republican Party,* 128 S. Ct. 1184, 1191 (2008); *Clingnzan v. Beaver,* 544 U.S. 581, 586 (2005); *Cal. Democratic Party v. Jones,* 530 U.S. 567, 582 (2000); *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 192 n.12; *Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 358 (1997); *Burdick v. Takushi,* 504 U.S. 428, 434 (1992). Accordingly, Virginia's state-residency requirement is subject to strict scrutiny because it imposes a severe burden on Plaintiff's freedoms of speech and association.

When a state regulation severely burdens First Amendment rights, the burden is *on the government*, even at the preliminary injunction stage, to prove that the restriction is narrowly tailored to serve a compelling government interest. *Citizens United v. FEC*, 130 S. Ct. 876, 898 (2010); *see also Meyer*, 486 U.S. at 428 (law at issue "imposed a burden on political expression that *the State . . . failed* to justify"); *Buckley*, 525 U.S. at 195 (same) (quoting *Meyer*); *see also Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,* 546 U.S. 418, 429 (2006) (observing that in *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004), the Court appropriately granted a

preliminary injunction "where *the Government* had failed to show a likelihood of success under the compelling interest test" (emphasis added)).

To satisfy its burden, a state must provide more than speculative, categorical answers. *See Gonzales*, 546 U.S. at 430-31 (strict scrutiny is not satisfied by a "categorical approach," but rather, requires a case-by-case determination of the question).  In other words, the government "must do more than simply posit the existence of the disease sought to be cured.  It must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622,664 (1994) (citation and internal quotation marks omitted); *see also Meyer*, 486 U.S. at 426 (refusing to accept state's bald argument that paid circulators might be more tempted to cheat than volunteer circulators where the state offered "[n]o evidence…to support that speculation").

In this case, Defendants have failed to set forth a single narrowly tailored, compelling state interest which would justify the burdens Virginia's state-residency requirement places on Plaintiff's First Amendment freedoms of speech and association.  Accordingly, Plaintiff has carried his burden to show he is likely to succeed on the merits.

## B.
### Virginia's Signature Requirement

The required amount of signatures on a petition to be a party's candidate for the office of President of the United States combined with Virginia's residency requirement is simply unreasonably burdensome and is not narrowly tailored to meet a compelling governmental interest. As discussed in Plaintiff's brief, Virginia's requirements are substantially similar to the ballot access requirements that were in place in New York prior to New York's statute being held unconstitutional in *Rockefeller v Powers*, 78 F.3d 44 (2d Cir 1999):

With regard to the question of the substantiality of the burden placed on candidates seeking access to the primary ballot, the district court found that candidates without the support of the state Republican leadership were substantially burdened by the combination of (i) the requirement that a slate of delegates collect signatures in each district amounting to 5% or 1250 registered Republicans, whichever is less; (ii) the requirement that the collection of signatures must occur in a period of 37 days, during which there are several important holidays, inclement weather, school and family vacations, and short periods of daylight; (iii) a rule limiting a voter from signing petitions for more than one candidate, thus reducing the total pool available to those collecting signatures; (iv) a host of rules defining what is a valid signature, including rules as to the qualification of witnesses to signings and inclusion of the election or Assembly district numbers of signers; and (v) other highly technical requirements that concern the presentation of petitions containing the signatures to election officials. We agree that this combination of New York requirements severely hampers candidates in contacting a sufficient number of registered Republicans and in collecting, legally documenting, and validly presenting their signatures.

*Id.*

The mandatory signature requirement, which is inextricably intertwined with the residency restriction requirements, creates a severe burden on Plaintiff's First Amendment rights of freedoms of speech and association. As such, it is subject to strict scrutiny analysis and the burden shifts to the Defendants to prove the government has a compelling interest which justifies the burden. As discussed *supra*, Defendants failed to demonstrate any specific, narrowly tailored, compelling interest which would justify these burdens. For this additional reason, Plaintiff has carried his burden to show he is likely to succeed on the merits.

### C.
### Submission of Signatures is Discretionary

While Plaintiff has shown a likelihood of success on the merits on its constitutional arguments, the Court need not determine the constitutionality of section 24.2-545 B due to the permissive nature of the signature requirement contained therein.  Defendants do not contest that the unambiguous language of section 24.2-545 B of the Virginia Code provides that "[a]ny

person seeking the nomination of the national political party for the office of President of the United States, or any group organized in this Commonwealth on behalf of, and with the consent of such person, *may* file with the State Board petitions signed by at least 10,000 qualified voters." VA. CODE ANN. § 24.2-545 B (emphasis added). The legislature's use of the term "may" is *prima facie* evidence it intended the term to be permissive, and the Courts will only construe it to be mandatory "when it is necessary to accomplish the manifest purpose of the legislature." *Harper v. Va. Dept. of Taxation*, 462 S.E.2d 892, 898 (Va. 1995).

The Virginia Supreme Court "presume[s] that the legislature chose, with care, the words it used when it enact[s] [a] . . . statute." *Zinone v. Lee's Crossing Homeowner's Ass'n.*, 714 S.E.2d 922, 925 (Va. 2011). The Court's presumption becomes more steadfast when "the General Assembly has used specific language in one instance, but omits that language or uses different language when addressing a similar subject elsewhere in the Code." *Id.*

In Virginia's election statutes, the legislature carefully chose to utilize the word "shall" in related provisions governing the number of signatures required to be placed on certain ballots in the state. However, section 24.2-545 B of the Virginia Code contains no such requirement.

The additional language referring to "requirements" in Section 24.2-545 does not change the permissive connotation of the use of "may" in regards to the filing of 10,000 valid signatures. The Defendants assert section 24.2-545's requirement for "the names of all candidates who have satisfied the requirements of this section" "shall appear on the ballot" of the "presidential primary for that party" demonstrates the legislature's intent for the 10,000 signature requirement to be mandatory. However, the "requirement" for the petition to be filed clearly does not overcome the presumption the legislature intended the earlier use of "may" to be construed as permissive. Accordingly, Plaintiff is not required by Virginia law to submit 10,000 signatures to

be placed on the ballot.   For this additional reason, Plaintiff has carried his burden to show he is likely to succeed on the merits.

## II.
### Plaintiff is likely to suffer irreparable harm in the absence of preliminary relief

As determined by this Court in its January 10, 2012 Order, "[t]he harm to [Plaintiff] would obviously be irreparable."   The Court has a firm basis for its finding because the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Newsom ex rel. Newsom v. Albemarle County Sch. Bd.,* 354 F.3d 249, 261 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976)).   Furthermore, the Fourth Circuit recognizes that "in the context of an alleged violation of First Amendment rights, a plaintiff's claimed irreparable harm is 'inseparably linked' to the likelihood of success on the merits of plaintiff's First Amendment claim." *Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009) (quoting *W. Va. Assoc. of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 512 F. Supp. 2d 424, 429 (S.D. W. Va. 2007)).   As set forth above, the Virginia ballot access requirements unconstitutionally burden Plaintiff's freedoms of speech and association. Thus, Plaintiff has established irreparable harm.

Defendants assert Plaintiff's attempt to secure signatures and comply with the State's unconstitutional interpretation of section 24.2-545 B somehow prevents him from challenging the statute.   This simply is not the law, and Defendants cite no support for this assertion.

Plaintiff's injuries are particularly acute because the Virginia ballot access requirements have, as applied here, prevented Plaintiff from qualifying for the ballot.   If Plaintiff does not appear on the ballot, Plaintiff will have forever lost the ability to obtain the convention delegates from the Commonwealth of Virginia in his bid to be the Republican Party nominee for Office of

the President of the United States *in the 2012 election.*   Thus, in the absence of a preliminary injunction, Plaintiff will suffer irreparable harm.

### III.
### The balance of the equities tips in Plaintiff's favor

While the balancing of the equities merely requires the burden imposed on the plaintiffs if a preliminary injunction is *not granted* to outweigh the burden that *granting* a preliminary injunction would impose on the defendants, the balance of the equities weighs heavily in Plaintiff's favor.  *See Winter,* 129 S. Ct. at 374, 378.   A governmental agency "is in no way harmed by issuance of a preliminary injunction which prevents it from enforcing a regulation, which . . . is likely to be found unconstitutional."  *Newsom,* 354 F.3d at 261.

In this case, the Commonwealth will not be harmed by the issuance of an injunction against the enforcement of the state-residency requirement.   Indeed, the only harm the Commonwealth will suffer is in being restrained from maintaining a law that is likely to be found unconstitutional.  Plaintiff, on the other hand, is likely to suffer irreparable injury because of his "loss of First Amendment freedoms."  The balance of the equities therefore tips decidedly in his favor.

Defendants assert that any relief given to Plaintiff would cause Virginia to violate federal statutes and a consent decree.  This Court has already determined in its January 10, 2012 Order that no federal statutes and no consent decrees would be violated by granting Plaintiff his requested relief.  The Court found that providing Plaintiff his requested relief would allow the electoral officials eight days to prepare and mail ballots under current deadlines imposed by law. What the Court did not mention is the availability to secure extensions of the deadlines of the applicable laws.  Due to the lack of hardship on the Defendants, this equitable argument clearly weighs in Plaintiff's favor.

The Defendants further argue that injunctive relief (*i.e.* placing Plaintiff on the ballot) would cause voter confusion.  As the Court has already determined, Plaintiff is likely to succeed on the merits of his case, which would mean his name would be ordered to be placed on the ballot after a final hearing.  Equity, therefore, is clearly in favor of including Plaintiff on the initial ballot to avoid future voter confusion, and Defendants' arguments are nonsensical.

Finally, Defendants argue that Plaintiff's delay in seeking an injunction weighs in favor of not granting an injunction.  Plaintiff's diligence in attempting to comply has been briefed by Plaintiff, and arguments concerning Plaintiff's diligence have been heard by the Court.  Plaintiff filed suit just days after failing to secure the unconstitutionally high number of signatures required to be placed on Virginia's ballot, and Defendants cannot demonstrate any prejudice from the timing of Plaintiff's suit.  Because Virginia will be able to timely print and mail its ballots in the event this Court grants Plaintiff's request to be placed on the ballot, the timing in which Plaintiff filed suit neither caused or exacerbated any burden on Defendants.  In fact, if Virginia chooses to print and mail its ballots in contradiction to this Court's January 10, 2012 Order, its damages would be of its own making.  Accordingly, the balance of the equities weighs heavily in Plaintiff's favor, and the Court should grant the injunctive relief requested by Plaintiff.

### IV.
### An injunction is in the public's interest

The final prerequisite to the grant of a preliminary injunction is that it serve the public interest.  As the Fourth Circuit clearly stated, "[s]urely, upholding constitutional rights serves the public interest." *Newsom,* 354 F.3d at 261.  Because this Court has found that Plaintiff has demonstrated a likelihood of success on the merits of his constitutional challenge, granting a preliminary injunction here will have the effect of "upholding constitutional rights."  These are not only Plaintiff's constitutional rights, but the rights of all candidates, petition circulators,

voters, and all citizens of Virginia and the United States.  It is clear that granting the injunction would serve the public interest.

### Plaintiffs Have Standing to Challenge the Constitutionality of Section 24.2-545 B

Defendants claim Plaintiff does not have standing to bring this suit for want of injury, is fairly traceable to the residency/voter eligibility requirement.  In this argument, Defendants assert Plaintiff did not demonstrate he was ready, willing, and able to use nonresident petition circulators and that Plaintiff's injury was due to his inability to timely secure 10,000 valid signatures.  Defendants ignore the inextricably combined nature of the two residency and numeric requirements.  The inability to use nonresident petition circulators has an obvious impact on a candidate's ability to secure more signatures than he did.

Virginia cannot reasonably argue that one unconstitutional regulation, which prevents Plaintiff from complying with a second regulation (whether constitutional or not), prevents Plaintiff from having standing from challenging both regulations when the regulations act in concert with one another to cause the Plaintiff's injury.  Further, Plaintiff was diligent in attempting to comply with section 24.2-545 B, and filed suit mere days after it became clear the burdens imposed by the statute prevented him from being able to comply.  Plaintiff's claims are anything but hypothetical as alleged by Defendants—Plaintiff, Governor of the second most populous state and a nationally recognized candidate for the Office of the President of the United States, was kept off the primary ballot of the State of Virginia.

### Plaintiff's Claims Are Not Barred By Laches

In asserting the equitable defense of the doctrine of laches, Defendants must demonstrate they were prejudiced by Plaintiff's unreasonable delay in pursuing his rights or claims.  *See White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990).  In this pre-election suit, Plaintiff diligently

pursued his efforts to comply with Virginia's unconstitutional election laws.  Governor Perry suffered an injury-in-fact when he was denied a position on the Republican primary ballot on December 23, 2011.  He sought declaratory and injunction relief on December 27, 2011, a mere four (4) days after he was informed he did not meet the petition requirements to be on the ballot.

The failure of Governor Perry to have made the same claim before the date on which signature petitions were due does not give rise to the defense of laches.  Laches simply does not apply as a defense before a claim is ripe.  *See, e.g.*, *Public Citizen v. Miller*, 813 F. Supp. 821 (N.D. Ga. 1993), *aff'd* 992 F.2d 1548 (11th Cir. 1993) (per curium).  Accordingly, Governor Perry did not have a ripe claim until he was denied ballot access and thereby suffered any actual harm.  See *Texas v. United States*, 523 U.S. 296, 300 ("[A] claim is not ripe if it rests upon '"contingent future events that may not occur  . . ."'" (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-581 (1985) (quoting 13A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3532, p. 112 (1984)) (quotation marks omitted)).

Plaintiff's requested relief does not prejudice Defendants.  Instead, the denial of the relief requested by Plaintiff will prejudice and abridge both Plaintiff's and the Virginia voters' constitutional rights.  Such violations of Plaintiff's and the Virginia voters' constitutional rights should not go unremedied.  *See McCarthy v. Briscoe*, 429 U.S. 1317, 1322 (1976) (ordering a candidate's name to be placed on the ballot as the remedy after the candidate's constitutional rights were violated).

"Laches imposes on the defendant the ultimate burden of proving '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'"  *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990) (quoting *Costello v. United States*,

365 U.S. 265, 282 (1961)).  "Where there has been no inexcusable delay in seeking a remedy and where no prejudice to the defendant has ensued from the mere passage of time, there should be no bar to relief."  *Gardner v. Panama R. Co.*, 342 U.S. 29, 31 (1951).

## I.
## Plaintiff was diligent

"The first element of laches—lack of diligence—exists where "the plaintiff delayed inexcusably or unreasonably in filing suit."  *White*, 909 F.2d at 102 (quoting *Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305, 318 (D.C. Cir. 1987); citing *Giddens v. Isbrandtsen Co.*, 355 F.2d 125, 128 (4th Cir. 1966); *Baylor Univ. Med. Ctr. v. Heckler*, 758 F.2d 1052, 1057 (5th Cir. 1985)).  The evidence in this case establishes Plaintiff attempted to comply with Virginia's unconstitutional voting laws and did not sit on his rights after it became clear he would not be placed on the ballot.

After receiving notice his name would not be placed on the ballot, Plaintiff filed this suit four days later.  Accordingly, Plaintiff cannot be charged with a lack of diligence in enforcing his rights.  *See Smith v. Bd. of Election Comm'rs for the City of Chicago*, 587 F. Supp. 1136, 1142 (N.D. Ill. 1984) (holding three candidates could not be charged with a lack of diligence prior to submitting their signatures because they may well have expected to be able to comply with the applicable statute); *see also McCarthy*, 429 U.S. at 1322 (overruling finding of laches defense).

## II.
## Defendants are not prejudiced

"The second element—prejudice to the defendant—is demonstrated by a disadvantage on the part of the defendant in asserting or establishing a claimed right or some other harm caused by detrimental reliance on the plaintiff's conduct."  *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990) (citing *Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 844 (D.C. Cir. 1982).

In this case, the only prejudice Defendants might suffer is their inability to enforce Virginia's unconstitutional election laws.  Defendants have taken no affirmative action to which they can allege to have been prejudiced.

Further, the ballots for the election have not been printed, and are not due under current Virginia law to be mailed until January 21, 2012—45 days prior to the election and eight days after this Court will make its ruling on Plaintiff's request for injunctive relief.  *See* VA. CODE ANN. § 24.2-612.  If Defendants proceed to print ballots without Plaintiff's name before this Court makes its ruling in contradiction to this Court's January 10, 2012 Order, any prejudice and damage caused by having to reprint the ballots after this Court makes a ruling will be of Defendants' own making.  Plaintiff has been diligent in seeking redress for the violations of his constitutional rights by filing suit just days after failing to secure the unconstitutionally high number of signatures required to be placed on Virginia's ballot.  Further, Defendants cannot demonstrate any prejudice from the timing of Plaintiff's suit.  Equity clearly favors Plaintiff, and Defendants' defense of laches should be denied.  *McCarthy*, 429 U.S. at 1322-23.

## Conclusion

Plaintiff, the Honorable Rick Perry, is undisputedly a nationally recognized candidate for the Office of the President of the United States.  Virginia's unconstitutional election laws have unquestionably infringed on his First Amendment rights to free speech and freedom of association.  Plaintiff met his burden under *Winter,* and this Court should grant Plaintiff his requested injunctive relief and order his name placed on Virginia's primary ballot.

Date: January 11, 2012                         Respectfully submitted,

                                               **THE HONORABLE RICK PERRY**

                                                 /s/  Edward Everett Bagnell, Jr.
                                               Hugh M. Fain, III (VSB # 26494)
                                               Email:  hfain@spottsfain.com
                                               M. F. Connell Mullins, Jr. (VSB No. 47213)
                                               Email:  cmullins@spottsfain.com
                                               Edward E. Bagnell, Jr. (VSB # 74647)
                                               Email:  ebagnell@spottsfain.com
                                               411 East Franklin Street, Suite 00
                                               Richmond, VA  23219
                                               Telephone:  (804) 697-2040
                                               Facsimile:  (804) 697-2140

                                               **BEIRNE, MAYNARD & PARSONS, L.L.P.**
                                               Joseph M. Nixon – Lead Counsel
                                               James E. ("Trey") Trainor, III
                                               Martin D. Beirne
                                               1300 Post Oak Boulevard, Suite 2500
                                               Houston, TX 77056
                                               Telephone: (713) 623-0887
                                               Facsimile: (713) 960-1527
                                               **ATTORNEYS FOR PLAINTIFF**
                                               **THE HONORABLE RICK PERRY**

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2012, I will electronically file the foregoing document with the Clerk of the Court using the CM/ECF System, which will then send a notification of such filing (NEF) to all counsel of record:

E. Duncan Getchell, Jr.
Wesley G. Russell
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
Telephone: (804) 786-2436
dgetchell@oag.state.va.us
wrussell@oag.state.va.us
*Counsel for Charles Judd, Kimberly Bowers and Don Palmer, members of the Virginia State Board of Elections, in their official capacity*

Joseph N. Lief
Virginia International Raceway
1245 Pinetree Road
Alton, Virginia 24520
Telephone: (434) 822-7700
*Counsel for Charles Judd, Kimberly Bowers and Don Palmer, members of the Virginia State Board of Elections, in their official capacity*

Lee Elton Goodman
LeClairRyan, A Professional Corporation
1701 Pennsylvania Ave NW
Suite 1045
Washington, DC 20006
lee.goodman@leclairryan.com
*Counsel for Pat Mullins, in his official capacity as Chairman of the Republican Party of Virginia.*

Charles M. Sims (VSB No. 35845)
LeClairRyan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, Virginia 23219
Telephone: (804) 343-5091
Facsimile:  (804) 783-7655
Charles.sims@leclairryan.com
*Counsel for Patrick Mullins, Chairman of the Republican Party of Virginia*

J. Christian Adams (VSB No. 42543)
Election Law Center, PLLC
300 N. Washington St., Suite 405
Alexandria, VA 22314
Telephone: (703) 963-8611
Facsimile: (703) 740-1773
adams@electionlawcenter.com
*Counsel for Newt Gingrich, Jon Huntsman, Jr. and Rick Santorum*

Stefan C. Passantino
J. Randolph Evans
Benjamin P. Keane
McKenna Long & Aldridge, LLP
1900 K St. NW
Washington, DC 20009
Telephone: (202) 496-7500
Facsimile: (202) 496-7756
*Counsel for Newt Gingrich*

Craig Engle
Arnet Fox LLP
1050 Connecticut Avenue, NW
Washington, DC 20036-5339
Telephone: (202) 857-6000
Facsimile: (202) 857-6395
*Counsel for Jon Huntsman, Jr.*

Cleta Mitchell
Foley & Lardner LLP
3000 K Street, N.W., Suite 600
Washington, DC 20007-5109
Telephone: (202) 672-5300
Facsimile: (202) 672-5399
*Counsel for Rick Santorum*

/s/ Edward Everett Bagnell, Jr.
Edward E. Bagnell, Jr. (VSB # 74647)
Email:  ebagnell@spottsfain.com
Spotts Fain PC
411 East Franklin Street, Suite 00
Richmond, VA  23219
Telephone:  (804) 697-2040
Facsimile:  (804) 697-2140
**ATTORNEYS FOR PLAINTIFF**
**THE HONORABLE RICK PERRY**