IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

**THE HONORABLE RICK PERRY,**

    **Plaintiff,**

**THE HONORABLE NEWT GINGRICH, THE
HONORABLE JON HUNTSMAN, JR., AND
THE HONORABLE RICK SANTORUM,**

    **Intervenor-Plaintiffs,**

v.                                                               Civil No. 3:11-cv-856

**CHARLES JUDD, KIMBERLY BOWERS, and
DON PALMER, members of the Virginia State
Board of Elections, in their official capacities, and
PAT MULLINS, in his official capacity as
Chairman of the Republican Party of Virginia,**

    **Defendants.**

_____/

**RESPONSE OF INTERVENOR-PLAINTIFFS, THE HONORABLE NEWT GINGRICH,
JON HUNTSMAN, JR., AND RICK SANTORUM TO DEFENDANTS' MEMORANDUM
IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

    Intervenor-Plaintiffs, The Honorable Newt Gingrich, the Honorable Jon Huntsman, Jr., and the Honorable Rick Santorum (collectively, the "Intervening Plaintiffs") submit the following brief in response to Defendants' memorandum in opposition to Plaintiff Rick Perry's motion for preliminary injunction.

**Introduction**

    As both Plaintiff Perry and the Intervening Plaintiffs clearly established in their initial briefs filed with this court on January 6, 2012, section 24.2-545 B of the Virginia Code places an unnecessary and unacceptable burden on the constitutional rights of Governor Perry, Speaker Gingrich, Governor Huntsman, and Senator Santorum under the First and Fourteenth

Amendments.  Thus, the central question at issue in this case remains clear – does the requirement that petition circulators be Virginia residents who are eligible to vote in the Commonwealth qualify as a narrowly-tailored restriction on constitutional rights that is designed to serve a compelling state issue?  The answer to both prongs of this question is unequivocally no.

In fact, in their substantive briefing before this Court, Defendants fail to offer any specific state interest, much less a compelling state interest, to justify the state infringement on the protected speech rights of Plaintiff Perry and the Intervening Plaintiffs.  Nor do Defendants offer any reasonable support for the assertion that the current infringement on the rights of Plaintiff and Intervening Plaintiffs is no broader in scope than necessary to achieve the particular purposes of the state.  As this Court made clear in its Order of January 10, 2012, the Commonwealth "has a heavy burden to justify [its] restriction on speech" in both these regards.  The Defendants have failed to meet this burden, and as such, this Court should grant Plaintiff's and Intervening Plaintiffs' requests for injunctive relief and subsequently order that Governor Perry, Speaker Gingrich, Governor Huntsman, and Senator Santorum have their names placed on the ballot for the 2012 Virginia Republican presidential primary.

**The Remedy Sought by Intervening Plaintiffs and Plaintiff Perry is Wholly Appropriate**

I.  **Intervening Plaintiffs and Plaintiff Meet the Standards for Injunctive Relief**

A court may issue a preliminary injunction if it determines that: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in the plaintiff's favor; and (4) an injunction is in the public interest.  *W.Va. Assoc. of Club Owners & Fraternal Servs., Inc., v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009) (applying *Winter v. Natural Res. Def. Council*, 555

U.S. 7, 19 (2008)). Defendants assert Plaintiff and Intervening Plaintiffs must meet an even higher standard and "demonstrate that [they are] virtually certain to prevail in the case on the merits." Such a standard is not supported by the appropriate case law. Rather, if a court finds that injunctive relief is essentially all the relief to which a plaintiff would be entitled after a trial on the merits, a court need only analyze the injunctive requests with a slightly higher degree of caution and ascertain whether the factors discussed in *Winter* "weigh heavily" in the Plaintiff's favor.

At present, the Court has indicated that this process is already properly under way. In fact, in the Court's Order of January 10, 2012, it indicated that there is a "strong likelihood" that it will find that section 24.2-545 B of the Virginia Code unconstitutional, that the "harm to [Intervening Plaintiffs] would obviously be irreparable", and that the "public interest[s] … weigh heavily in the favor of the Plaintiffs." The briefs submitted by Plaintiff and Intervening Plaintiffs in this case only serve to further bolster these conclusions. As such, given that each of the *Winter* factors for injunctive relief have been met by Plaintiff and Intervening Plaintiffs, it is wholly appropriate for this Court to grant the relief sought by Governor Perry, Speaker Gingrich, Governor Huntsman, and Senator Santorum at the conclusion of its hearing on January 13, 2012.

    A.    **Plaintiff Is Likely to Succeed on the Merits**

Intervening Plaintiffs will not spend a great deal of time re-hashing the merits of their constitutional case against Defendant. The briefs filed on behalf of Plaintiff, Intervening Plaintiffs, and *amicus curiae* make it abundantly clear that Virginia's election law places a severe burden on the First Amendment rights of Intervening Plaintiffs. Specifically, the state-residency requirement for petition circulation and the accompanying signature requirement are both unreasonably burdensome and not narrowly tailored to meet a compelling government

interest. As such, they cannot survive the "strict scrutiny" analysis demanded of laws that abridge the fundamental constitutional rights to speech and free association.

Virginia's state-residency requirement for petition circulators impacts the ability of Intervening Plaintiffs to disseminate their political views by restricting the number of overall message carriers who can gather signatures on their behalf, and in turn, the size of the audience that can be reached. *See Buckley*, 525 U.S. at 194-95. Likewise, it prevents Intervening Plaintiffs from selecting what they believe will be the most effective means of conveying their political messages. *See Meyer v. Grant,* 486 U.S. 414, 424 (1988). In addition, it impacts Intervening Plaintiffs' ability to gain access to the ballot, and therefore, their ability to make their candidacy the subject of state-wide discussion. *See id. at 423*. The lofty mandatory signature requirements of Virginia's statutory framework, which are inextricably intertwined with the state-residency requirements, only serve to exacerbate these problems.

To make matters worse, the restrictions set forth in Virginia law also negatively impact the constitutional rights of other parties beyond the Intervening Plaintiffs and Plaintiff Perry. The ballot access requirements and standards unnecessarily burden the free speech rights of out-of-state residents who wish to persuade Virginia voters of a particular political message, limit the support an out-of-state resident can give to the communication of a particular political message within the Commonwealth, burden the right of association of out-of-state residents wishing to associate with particular political candidates, limit the right of voters to receive and participate in a free exchange of information on political ideas and candidates, and restrict the choice of viable candidates to represent the political ideologies and preferences of Virginia Republicans. *See Krislov v. Rednour*, 226 F.3d 851, 859 & 861 (7th Cir. 2000); *Daien v. Ysursa*, 711 F. Supp. 2d 1215, 1224 & 1231 (D. Id. 2010); *Lerman v. Board of Elections*, 232 F.3d 135, 143 (2nd Cir.

2000); and *California Democratic Party v. Jones*, 530 U.S. 567, 575 (2000).

In light of all these problems, the burden is on the Government to prove that its restriction of constitutional rights is narrowly tailored to serve a compelling government interest. To satisfy this burden, a state must provide more than speculative, categorical answers. It must "demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Meyer v. Grant*, 486 U.S. 414, 426 (1988). At no point in its briefs have the Defendants posited a single, narrowly-tailored, and compelling state interest that would justify the burdens that Virginia's current state-residency and signature requirements place on the Intervening Plaintiffs' First Amendment freedoms. Rather, Defendants rely on speculative, categorical justifications for the state's infringement on constitutional rights and attempt to twist a body of case law that is otherwise favorable to Intervening Plaintiffs to support the assertion that Virginia's ballot access requirements are just narrowly-tailored enough to survive.[1] This cannot suffice as compelling support for an unreasonable burden of constitutional rights. As such, it should be recognized by this court that Intervening Plaintiffs and Plaintiff Perry have carried their burdens of showing they are likely to succeed on the merits.

    **B.**    **Plaintiff Is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief**

As determined by this Court in its January 10, 2012 Order, "[t]he harm to [Intervening

---

[1] For example, Defendants' characterization of the legal authority presented in the *Lux* line of cases is wholly off base. Defendants' brief to the Court attempts to portray the District Court decision in *Lux v. Rodrigues* and Chief Justice Roberts' denial of Lux's appeal as dispositive of the constitutional issues before this Court. Nothing could be further from the truth. In fact, the Fourth Circuit's opinion in *Lux v. Judd* makes it abundantly clear that the justification used to support the residency requirements in *Lux v. Rodrigues* have been clearly called into question by the Supreme Court. *See* pg. 9 of the *Lux v. Judd* opinion where it states that "Lux contends that the district court erred by deferring to our reasoning in *Davis* when evaluating the district residency requirement's constitutionality. He argues in particular that the Supreme Court's intervening decisions in *Meyer v. Grant*, 486 U.S. 414 (1988), and *Buckley*, 525 U.S. at 182, so undermined Davis's basis for sustaining the residency requirement as to overrule that portion of our analysis. We agree." (emphasis added).

5

Plaintiffs] would obviously be irreparable." The Court has a firm basis for its finding because the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Newsom ex rel. Newsom v. Albemarle County Sch. Bd.*, 354 F.3d 249, 261(4th Cir. 2003) (internal quotation marks omitted) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Furthermore, the Fourth Circuit recognizes that "in the context of an alleged violation of First Amendment rights, a plaintiff's claimed irreparable harm is 'inseparably linked' to the likelihood of success on the merits of plaintiff's First Amendment claim." *Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009) (quoting *W. Va. Assoc. of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 512 F. Supp. 2d 424, 429 (S.D. W. Va. 2007)). As set forth above, the Virginia ballot access requirements unconstitutionally burden Intervening Plaintiffs' freedoms of speech and association. Thus, Intervening Plaintiffs have done more than enough to establish irreparable harm.

Intervening Plaintiffs' injuries are particularly acute in this instance because the unconstitutional Virginia ballot access requirements have, as applied here, prevented them from qualifying for the Republican ballot in the presidential primary. If Intervening Plaintiffs do not appear on the ballot, Speaker Gingrich, Governor Huntsman, and Senator Santorum will have forever lost the ability to obtain the 49 Republican National Convention delegates allocated to the Commonwealth of Virginia, which are available to Republican presidential candidates participating in the 2012 presidential primary election. In addition, such delegates will still be available to their direct competitors in the race for the 2012 Republican presidential nomination. Thus, in the absence of a preliminary injunction, Plaintiff will suffer irreparable harm.

    **C.**    **The Balance of Equities Tips in the Intervening Plaintiffs' Favor and the Injunction is in the Public's Interest**

The balancing of the equities merely requires that the burden imposed on the Intervening Plaintiffs if a preliminary injunction is not granted outweigh the burden that granting a preliminary injunction would impose on the Defendants. *See Winter*, 129 S. Ct. at 374, 378. In this instance, however, it is readily apparent that the balance of the equities weighs heavily in Intervening Plaintiffs' favor.

It is well established that a governmental agency "is in no way harmed by issuance of a preliminary injunction which prevents it from enforcing a regulation, which … is likely to be found unconstitutional." *Newsom*, 354 F.3d at 261. In just the same way, the Commonwealth of Virginia and the Defendants will not be harmed by the issuance of an injunction against the enforcement of the state-residency requirement for petition circulators. It is no burden on the Commonwealth to stop enforcing a state law that is found unconstitutional. Likewise, it is no substantial burden on the Commonwealth or Defendants to comply with an order of this Court that provides the relief requested by the Intervening Plaintiffs and Plaintiff Perry. Defendants claim that a court order granting the relief sought in this matter will violate federal statutes, consent decrees, and cause substantial burdens on the various election registrars across the Commonwealth. This Court clearly disagreed with those assertions, however. In fact, in its Order of January 10, 2012, the Court determined that no statutes or consent decrees would be violated by granting the injunctive relief sought by Intervening Plaintiffs and Plaintiff Perry. In conjunction, these "burdens" on the Defendants are but small prices to pay in comparison to the potential irreparable injury faced by the Intervening Plaintiffs if the state-residency requirements are found constitutional.

In the assessment of the equities, Defendants' arguments regarding voter confusion and time restrictions also fall short. There is little reasonable argument to be made for the fact that

voters would be confused by the addition of four nationally-known presidential candidates to the Virginia Republican presidential primary ballot. Likewise, it seem nonsensical to suggest that asking local registrars to construct and print a six-name Republican ballot for the primary would somehow cause an immense burden on those individuals or Defendants. This is particularly the case in light of the fact that the presidential primary ballot is the only applicable ballot being prepared for the March 6, 2012 election. Defendants also assert that the timing of the suit brought by Plaintiff Perry and Intervening Plaintiffs makes it extremely difficult for them to timely print and mail military, overseas, and absentee ballots. Given the Court's determination that it will issue a ruling on the relief sought by Intervening Plaintiffs and Plaintiff Perry following the hearing of January 13, 2012, there is little reason to believe that Defendants will not be able to comply with statutory deadlines for printing and mailing such ballots. The Court asserts as much in its Order of January 10, 2012.

Taking all of Defendants' arguments into consideration and weighing them against the certainty of harm that would be suffered by Intervening Plaintiffs and Plaintiff Perry should their requests for injunctive relief be denied, the balance of equities tips decidedly in the favor of granting the remedies sought by Speaker Gingrich, Governor Huntsman, Senator Santorum, and Governor Perry. This point is reinforced by the fact that the public interest in this matter weighs heavily in favor of the Intervening Plaintiffs and Plaintiff Perry. Surely no greater "public interest" exists in America than protecting, reinforcing, and upholding the fundamental rights set forth in the U.S. Constitution.[2] And surely no fundamental rights are more deserving of protection than the right to speech and free association. As such, it is difficult to divine a plausible argument asserting that the denial of injunctive relief designed to protect the

---

[2] The Fourth Circuit echoed this contention when it asserted, "[s]urely, upholding constitutional rights serves the public interest." *Newsom*, 354 F.3d at 261.

constitutional rights of political candidates, petition circulators, and voters is not in the public interest.

## II. It Is Wholly Appropriate for the Court to Grant Injunctive Relief Placing Intervening Plaintiffs on the Republican Presidential Primary Ballot

As discussed in Intervening Plaintiffs' initial brief to this Court, when a violation of civil and constitutional rights occurs, it is wholly appropriate for a court to fashion a remedy placing plaintiffs in the appropriate position had the infringement not occurred. Along these same lines, in cases where a state has unconstitutionally prevented a party or a candidate from accessing the ballot, a Court may even be "required to order that the candidates be placed on the ballot." *See Libertarian Party of Ohio v. Brunner*, 567 F. Supp. 2d 1006, 1015 (S.D. Ohio 2008). This is particularly the case in instances, like the present dispute, where the relief of ballot placement does not prejudice the Defendants and where denial of such relief will both prejudice and suppress the constitutional rights of the Intervening Plaintiffs and the voters of the Commonwealth of Virginia as a whole.

As instructed by the Supreme Court in *McCarthy v. Briscoe*, 429 U.S. 1317, 1323, 97 S.Ct. 10, 50 L.Ed.2d 49 (U.S. 1976), before placing constitutionally-aggrieved candidates on a particular ballot, courts should be sensitive to a state's interest in preventing "laundry list ballots" that may discourage, confuse, or frustrate voters. Likewise, courts should look to available evidence or to matters subject to judicial notice to determine whether there is reason to assume "requisite community support" for the candidates at issue. Short of these concerns, however, violations of the constitutional rights of candidates and voters should not go unremedied.

In the instant case, there can be no question that Intervening Plaintiffs and Plaintiff Perry all have the "requisite community support" to be placed on the ballot in Virginia. Each is

nationally-recognized and generally advocated by the news media to be major candidates for the Republican presidential nomination. Moreover, each has appeared in numerous nationally-televised debates against the other major Republican candidates, campaigned vigorously around the United States, and raised millions of dollars from individual contributors toward their overall presidential campaigns. As such, this Court should have no concern about the first sensitivity set forth in *McCarthy*.

Likewise, this Court should have little concern that granting the ballot access remedy sought by Intervening Plaintiff (and Governor Perry) would create a "laundry list" ballot that would discourage, confuse, or frustrate the voters of the Commonwealth. Despite Defendants' claims to the contrary, the addition of Intervening Plaintiffs and Plaintiff Perry to the Republican ballot will lead to less discouragement, confusion and frustration on the part of Virginia voters. Giving voters a meaningful choice among all the major Republican candidates for President will not only increase overall turnout and participation in the March 6, 2012 primary (encouraging broader involvement in one of the most fundamental representative democratic processes), but it will also restore public confidence in the Commonwealth's respect for the First Amendment rights of those individuals seeking to petition the government.

Accordingly, as set forth above and in the previous briefs to this Court on behalf of Intervening Plaintiff and Plaintiff Perry, the only appropriate remedy for the constitutional violations at issue in this matter is for this Court to issue an order mandating that Defendants place Intervening Plaintiffs and Plaintiff Perry on the Republican primary ballot for the office of President of the United States.

## Conclusion

In light of the above arguments and the previous arguments made on behalf of the

Intervening Plaintiffs and Plaintiff Perry, it is undisputedly clear that Virginia's unconstitutional election laws place an unjustifiable burden on both free speech and association rights under the First Amendment to the U.S. Constitution. Given that the collective Plaintiffs have met their burden under *Winter* for the granting of a preliminary injunction and given the Defendants' overall inability to offer a compelling justification for the restrictive nature of Virginia's ballot access requirements, it is appropriate for this Court to grant the relief sought by Speaker Gingrich, Governor Huntsman, Senator Santorum, and Governor Perry. As such, the Court should grant the requested injunctive relief and order that the names of Intervening Plaintiffs (and Governor Perry) be placed on the Republican ballot for the March 6, 2012 Virginia presidential primary.

Respectfully Submitted,

**The Honorable Newt Gingrich**
**The Honorable Jon Huntsman, Jr.**
**The Honorable Rick Santorum**

Date: January 11, 2012

_____/S/_____
J. Christian Adams
Election Law Center, PLLC
300 N. Washington St., Suite 405
Alexandria, VA 22314
Tel: 703-963-8611
Fax: 703-740-1773
adams@electionlawcenter.com
Virginia Bar #42543

        Stefan C. Passantino
J. Randolph Evans
Benjamin P. Keane
McKenna Long & Aldridge, LLP
1900 K St. NW
Washington, DC 20009
Tel: 202-496-7500
Fax: 202-496-7756

ATTORNEYS FOR INTERVENOR-PLAINTIFF NEWT GINGRICH
*Pro Hac Vice applications accepted*

Craig Engle
Arent Fox LLP
1050 Connecticut Avenue, NW
Washington, DC 20036-5339
Tel: 202-857-6000
Fax: 202-857-6395

ATTORNEY FOR INTERVENOR-PLAINTIFF JON HUNTSMAN, JR.
*Pro Hac Vice application accepted*

Cleta Mitchell
Foley & Lardner LLP
3000 K Street, N.W., Suite 600
Washington, DC 20007-5109
Tel: 202-672-5300
Fax: 202-672-5399

ATTORNEY FOR INTERVENOR-PLAINTIFF RICK SANTORUM
*Pro Hac Vice application accepted*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 11, 2012, I will electronically file the foregoing document with the Clerk of the Court using the CM/ECF System, which will then send a notification of such filing (NEF) to all counsel of record:

E. Duncan Getchell, Jr.
Wesley G. Russell
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
Telephone: (804) 786-2436
dgetchell@oag.state.va.us
wrussell@oag.state.va.us
*Counsel for Defendants Charles Judd, Kimberly Bowers and Don Palmer, Members of the Virginia State Board of Elections, in their official capacity*


Joseph N. Lief
Virginia International Raceway
1245 Pinetree Road
Alton, Virginia 24520
Telephone: (434) 822-7700
*Counsel for Defendants Charles Judd, Kimberly Bowers and Don Palmer, Members of the Virginia State Board of Elections, in their official capacity*


Lee Elton Goodman
LeClairRyan, A Professional Corporation
1701 Pennsylvania Ave NW
Suite 1045
Washington, DC 20006
lee.goodman@leclairryan.com
*Counsel for Defendant Pat Mullins, in his official capacity as Chairman of the Republican Party of Virginia*


Charles M. Sims (VSB No. 35845)
LeClairRyan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, Virginia 23219
Telephone: (804) 343-5091

Facsimile: (804) 783-7655
Charles.sims@leclairryan.com
*Counsel for Defendant Pat Mullins, in his official capacity as Chairman of the Republican Party of Virginia*


Hugh M. Fain, III (VSB No. 26494)
M. F. Connell Mullins, Jr. (VSB No. 47213)
Edward Everett Bagnell, Jr. (VSB No. 74647)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone: (804) 697-2000
Facsimile: (804) 697-2100
Email: hfain@spottsfain.com
Email: cmullins@spottsfain.com
Email: ebagnell@spottsfain.com
*Counsel for Plaintiff Rick Perry*


Joseph M. Nixon (*Pro hac vice application granted*)
James E. ("Trey") Trainor, III (*Pro hac vice granted*)
Martin D. Beirne (*Pro hac vice application granted*)
Beirne, Maynard & Parsons, L.L.P.
1300 Post Oak Boulevard, Suite 2500
Houston, TX 77056
Telephone: (713) 623-0887
Facsimile: (713) 960-1527
Email: jnixon@bmpllp.com
*Counsel for Plaintiff Rick Perry*


_____/S/_____
J. Christian Adams (VA Bar #42543)
Election Law Center, PLLC
300 N. Washington St., Suite 405
Alexandria, VA 22314
Tel: 703-963-8611
Fax: 703-740-1773
adams@electionlawcenter.com